SAMUEL E. HALL v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY and Others.

June 1, 1899.

Nos. 11,557—(104).

Title.

Held, by.the chain of conveyances proved on the trial, the title to the land in controversy is in plaintiff.

Plat—Public Slip—Boundary of Lots not Extended across Street.

Two blocks of land were platted with a street between them; nearly all (but not all) of one block up to the line of the street being in shoal water, part of the Bay of Superior. Thereafter the latter block was dredged out deep enough to float vessels, and the public acquired by prescription a right to use that block as a public slip. Held, the platted lots in the other block, fronting on the street, extended to the middle line of the street, and their boundaries were not extended across the street to the public slip because the public acquired the slip.

Adverse Possession—Title and Possession.

Defendant claims title to the strips of land in question by reason of 15 years' continuous adverse possession in its grantors in connection with the adjoining land. The adjoining land was conveyed to defendant, but it never received a conveyance of said strips, and never was in possession of them. Held, it proved no title to them.

Unoccupied Land—Evidence.

Held, the evidence warranted a finding that the land in controversy was unoccupied at the time of the commencement of the action.

76 M.—26

Identification.

> *Held*, the evidence sufficiently identifies the land covered by a certain plat.

Certified Copy—Objection Insufficient.

> An objection that a certified copy of a will offered in evidence is incompetent, irrelevant, and immaterial is not sufficient to raise the point that the certificate of probate is not in proper form.

Map and Photograph as Evidence.

> *Held*, certain maps and photographs of the locality were made competent evidence by witnesses who testified that they were correct representations of the place.

Government Survey.

> *Held*, a certain line in a government survey was sufficiently identified.

Action in the district court for St. Louis county to determine adverse claims to real estate. The case was tried before Cant, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendant insurance company appealed. Affirmed.

*S. T. & William Harrison* and *Warner, Richardson & Lawrence,* for appellant.

*William C. White,* for respondent.

CANTY, J.[1]

This is an action to determine adverse claims. On the trial the court found for plaintiff, and from an order denying a new trial the defendant insurance company appeals.

So far as here material, Cowell's addition to Duluth consisted of two blocks, as shown by the annexed plat:

[1] BUCK, J., absent.

The addition is on a narrow neck of land bounded on the east by Lake Superior and on the west by the Bay of Superior. The plat extended some distance over into the shoal water in the bay. The blocks in the addition are not numbered, lettered, or otherwise designated; but the even-numbered lots are in the east half of each block, and the odd-numbered lots are in the west half, and this furnishes a means of identification. Many years ago the whole of the block west of Minnesota avenue was dredged out to the west line of the avenue, in constructing a slip. This slip extends several blocks north from the navigable water in the bay south of the dock line shown on the map, and is used by the public in floating lake vessels in and out through it.

Plaintiff alleged in his complaint that he is the owner of lots 8, 14, 16, and 18, fronting on Minnesota avenue, and the west half of the street in front thereof, and prayed judgment quieting his title to the same, but the court found that the public had acquired a prescriptive right to maintain said slip over said lots, and had an easement for that purpose in all of the same. The court further found that Minnesota avenue had never been accepted by the public, or opened for public travel, but had been abandoned by the public; that plaintiff is the owner of the west half of the avenue in front of said lots, and is entitled to judgment adjudging that defendants have no right, interest, lien, or claim in or to the same.

On this appeal neither party questions the correctness of the decision so far as it holds that the street has been abandoned by the public, but the controversy here is as to whether plaintiff or appellant is the owner of the west half of the street in front of said lots. The appellant is the owner of lots 7, 13, 15, and 17 on the east side of Minnesota avenue in the other block. These lots are directly across the avenue from the lots so claimed by plaintiff. Appellant claims title to said parts of the west half of the avenue on three grounds: (1) That, by the chain of recorded conveyances, it, and not plaintiff, has the title thereto; (2) that by reason of the fact that the whole of the west block, up to the west line of the avenue, has become a public slip or water highway, appellant's lots extend clear across the avenue, and abut on the public water, so as to include said parts of the west half of the avenue; and (3) that appellant has acquired a title to said parts of the avenue by reason of 15 years' adverse possession in appellant and its grantors.

1. We are of the opinion that, by the chain of conveyances proved on the trial, plaintiff, and not appellant, has the title to said parts of the west half of the avenue. The common grantees under whom both parties claim are Gilman, Luce, and Austrian, who owned seven-eighths, and the heirs of Mower, who owned one-eighth, of all of said lots on both sides of the avenue. One Van Brunt had acquired tax titles to said lots 7, 13, 15, and 17; and Gilman, Luce, and Austrian brought an action against him to quiet their title to these lots. It was held that Van Brunt's tax titles were void on their face. See Gilman v. Van Brunt, 29 Minn. 271, 13 N. W. 125. On the faith of his tax titles, Van Brunt had made improvements on these lots, and had also built a dock on said parts of the west half of the avenue fronting on said slip, so as to give him access to the slip, and the lake vessels landed at his dock. In 1885, after his tax titles were held void as aforesaid, he and one Gordon, as joint grantees, procured conveyances from Gilman, Luce, and Austrian of their seven-eighths interest in land described in the deeds as follows:

"Lots 1, 3, 5, 7, 13, 15, and 17 on Minnesota avenue, and lots 2, 4, 6, 8, 10, 12, 14, and 16 on Lake avenue; being in what is known as 'Cowell's Addition to Duluth,' and being an undivided  *  *  *

interest of that part of lot 4, section 27,   *   *   *   which lies west of said Lake avenue, as the same is now used and traveled, and north of Buchanan street on Minnesota Point."

The north line of said government lot 4 is the dotted line drawn diagonally across the north end of the west block.

Appellant contends that by these conveyances all of the title of Gilman, Luce, and Austrian to both blocks, including the land here in controversy, passed to Van Brunt and Gordon; and that appellant has, through mesne conveyances, acquired from Van Brunt and Gordon an undivided seven-eighths interest in the title to the land here in controversy. It will be observed that the latter part of the description above quoted is broad enough to cover the land here in controversy, while the former part is not. But it is not necessary for us to decide whether the latter and more general part of this description is controlled and limited by the former and narrower part thereof. In our opinion, the chain of conveyances show that appellant never acquired from Van Brunt and Gordon any title to any of the land here in controversy, but that plaintiff has acquired all of the interest of Van Brunt and Gordon, and of Gilman, Luce, Austrian, and the Mower heirs, to all of the land here in controversy, through mesne conveyances from them. The deeds from Van Brunt and Gordon to Dunn, appellant's grantor, contain no broader description than the following:

"Lots number 7, 13, 15, 17, and 19 on Minnesota avenue, and lots number 4, 6, 8, 10, 12, 14, and 16 on Lake avenue."

This, and only this, is the description in the subsequent conveyances from Dunn to appellant. As we will hereafter show, the title to said lots 7, 13, 15, and 17 never extended any further into Minnesota avenue than the middle line thereof, and a conveyance of these lots did not convey a title to any part of that avenue west of that middle line. The Mower heirs conveyed to appellant's grantors by the same description.

We need not consider whether or not, if the line of low-water mark in the Bay of Superior extended as far east as the west line of Minnesota avenue, said description in the deeds from Gilman, Luce, and Austrian to Van Brunt and Gordon would show an in-

tention to abandon the west block of Cowell's addition, which block would then consist wholly of water, and attach the riparian rights to said lots 7, 13, 15, and 17 on the opposite side of Minnesota avenue. The trial court found that said low-water mark did not extend as far east as the west line of Minnesota avenue, but that the east portion of said lots 8, 14, 16, and 18 on Minnesota avenue were always above low-water mark; and we are of the opinion that this finding is supported by the evidence.

2. We cannot hold that the dredging of the west block for a slip, and the acquiring by the public of the block, or an easement therein, up to the west line of Minnesota avenue, as such public slip or canal, had the effect of changing the lot lines as the lots were originally platted, or of causing what was formerly part and parcel of one platted lot to become part and parcel of another. As originally platted, the lots on each side of Minnesota avenue extended to the middle line of the avenue, and the acquiring of the public easement to maintain a public slip did not change these boundaries. Of course, where land bordering on navigable water is platted so as to lay out a street along the shore or bank, the fee of the lots on the opposite side of the street extends to the water, subject to the public easement, and the riparian rights attach to the lots. Wait v. May, 48 Minn. 453, 51 N. W. 471. But this is not such a case.

3. The court found that there never has been 15 years' possession adverse to plaintiff and his grantors, or any of them, of the land in controversy. This is assigned as error.

We do not deem it necessary to pass on the question thus raised. In order that the adverse possession of the successive adverse holders may be tacked together to make up the 15 years' continuous adverse possession, it is not necessary that each holder has conveyed or assigned in writing this right to his successor. There must be privity between the successive holders, but each may transfer his right to his successor by a voluntary transfer of the possession. Sherin v. Brackett, 36 Minn. 152, 30 N. W. 551; Ramsey v. Glenny, 45 Minn. 401, 48 N. W. 322. But does the rule that, without a written instrument, the holder may transfer his right to his successor by a voluntary transfer of possession, apply after the

title has been earned and actually acquired by the 15-years adverse possession, or would such application of the rule be repugnant to the statute of frauds?   We need not answer the question.

It does not appear that appellant ever received any written conveyance of the land here in controversy, or that it ever received a voluntary transfer of the possession of the same from its predecessors in interest, or that it was ever in possession of the same.   In 1892 Dunn mortgaged all of said lots in the west block to appellant. He and one Thompson had erected a warehouse on the greater part of the block.   In 1893 the warehouse was burned down, but the dock remained, which they had erected on the land in controversy, fronting on the slip; and the evidence tends to prove that they did not afterwards use the dock or the rest of the premises, but that all of the same were occasionally used by trespassers.   Appellant foreclosed its mortgage by a sale under the power in June, 1896; the year to redeem expired, but no redemption was made; and it does not appear that appellant has since taken possession of the land in controversy, or of the site of the old burned warehouse, or of any part of the same.   We are therefore of the opinion that appellant failed to show any title in itself to any part of the land in controversy.

We need not consider whether the evidence supports the finding of the court to the effect that Minnesota avenue has been vacated by the abandonment of it by the public, and, if it has not been vacated, whether the appellant has an easement in the whole width of the same, growing out of its right of access to the public slip or canal; such easement being a right to cross the avenue in order to reach the slip.   These questions were suggested by a member of the court on the argument, but it appears by the briefs of both parties to be a conceded fact that the avenue has been so vacated.

4. We are of the opinion that the evidence warranted the court in finding that when the action was commenced, the land in controversy was unoccupied, within the meaning of G. S. 1894, § 5817.

5. Appellant's contention that the court erred in admitting in evidence the plat of Cowell's addition, because it does not appear what land it covers, is wholly untenable.   Appellant's own answer

and evidence show what land and water the plat covers; and plaintiff's evidence shows it, also.

6. Appellant contends that the will of one Anderson was improperly admitted in evidence, because it was not shown that such will was ever probated. It is only necessary to say that a certificate of the probating of the will was attached to the certified copy of the will received in evidence. If the certificate is insufficient, appellant should have objected on that ground. An objection that the certified copy of the will offered is "incompetent, irrelevant, and immaterial" does not cover the point.

7. Plaintiff introduced in evidence two maps purporting to be maps of government surveys of the location in question, and of the surrounding land and water; also, a map in "Roe's Atlas," and two old photographs of the locality. Appellant contends that it was error to receive each of these in evidence, because no foundation was laid for its introduction. The point is not well taken. The witnesses sworn at the trial testified that these maps and photographs were correct representations of the place in question at the times designated, and it is immaterial whether these witnesses drew these maps at the trial, or took these photographs themselves, or whether the same were prepared by some one else in advance of the trial.

8. The west line of government lot 4 was sufficiently identified for the purposes of this case. The evidence tended, at least, to prove that this line was some distance west of the west line of Minnesota avenue, and that was sufficient.

This disposes of all the questions raised having any merit, and the order appealed from is affirmed.