## TWENTIETH CENTURY MACHINERY CO. v. LOEW MFG. CO.

(Circuit Court of Appeals, Sixth Circuit.   May 8, 1917.)

No. 2854.

1. PATENTS ⬦⟹51(1)—ANTICIPATION—PRIOR KNOWLEDGE OR USE.

   A patent is void for anticipation if the patented machine or its equivalent was known and used in this country by a single person prior to its invention or discovery by the patentee.

2. PATENTS ⬦⟹62—ANTICIPATION—BURDEN AND MEASURE OF PROOF.

   As respects an unpatented device, claimed to be a complete anticipation of a patent in suit and depending as to its existence and use upon oral testimony, the proof must be clear, satisfactory, and beyond reasonable doubt.

3. PATENTS ⬦⟹62—ANTICIPATION—EVIDENCE TO CARRY BACK INVENTION.

   Where the existence of an anticipating machine is shown with certainty in an infringement suit, it is necessary for complainant to carry the date of his invention back to a prior date by unequivocal and convincing proofs, and to show that he thereafter exercised reasonable diligence in reducing his conception to practice.

4. PATENTS ⬦⟹90(5)—PRIORITY—DILIGENCE IN REDUCTION TO PRACTICE.

   Diligence is of the essence of a proper relation between the conception and reduction to practice of an invention, and must consist of a degree of effort that can fairly be characterized as substantially one continuous act.

5. PATENTS ⬦⟹59—ANTICIPATION—EVIDENCE TO SUPPORT DEFENSE.

   A defendant has the same right to show the time of conception of an unpatented anticipating device, and diligence in reducing it to practice, as complainant has to do the same in respect to the patented device.

6. PATENTS ⬦⟹328—VALIDITY—BOTTLE-SOAKING MACHINE.

   The Volz patent, No. 736,037, for a bottle-soaking machine, held void for anticipation, in view of the prior art, and especially of an unpatented machine.

Appeal from the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Suit in equity by the Twentieth Century Machinery Company against the Loew Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

S. E. Hibben, of Chicago, Ill., for appellant.
S. J. Cox, of New York City, for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

WARRINGTON, Circuit Judge.   This was a suit for infringement of a patent.   The subject of the patent, No. 736,037, was devised by Simon Volz and, in virtue of direct and mesne assignments, the patent was granted to the appellant August 11, 1903.   The device is entitled in the letters patent a "bottle-soaking machine."   The pleadings in terms embrace the issues of validity and infringement as to all the claims; but the charge of infringement was limited at the trial to claims 2, 4, 7, 15, and 21.   The decree adjudged these claims void "for

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

want of patentable novelty and invention," and dismissed the bill of complaint. The plaintiff below, the Twentieth Century Company, appeals.

At the date of the patent in suit patented bottle-soaking machines were in general use, chiefly in beer-bottling plants, though also in plants used for bottling other liquids, such as mineral waters, ginger ale, and the like. These machines, including the one in suit, were designed through mechanical means to cleanse both the inside and outside of previously used bottles by conveying them into and through tanks containing, for instance, a caustic soda solution, and thence to a rinsing-tank into which the bottles were in most cases automatically discharged, thus fitting them for reuse. The machines alluded to differ of course in mechanism, but they were all designed to accomplish the same result. References to some of these prior patents are given in the margin.[1] An obvious difference between the machine in suit and the machines thus far referred to consists in the manner in which the cleansing tanks are disposed; the tank of the former being placed and used in a vertical, while the tanks of the latter are maintained in a horizontal, position; and among the advantages claimed in respect of the device in suit over the old devices are (1) reduction in floor-space; (2) availability of the machine for elevator purposes, since the bottles may be placed in the machine at the botton floor and carried through the cleansing solution in the vertical tank to an upper floor and there automatically discharged into the rinsing-tank in a condition for reuse. The difference thus pointed out is regarded by plaintiff as one of the important features of the patent in suit; it is fully stated in the specification:

"Heretofore the tanks of bottle-soaking machines have been arranged in a horizontal position upon the floor, and the large size required for their purposes has consumed considerable floor-space, the head room or space above the tank not being of course utilized. Again, the bottles arrive in the works or establishment at the lower floor, and the same are required for bottling on an upper floor, more generally the next or second floor, the bottle-cleansing occurring on either the lower floor or the next floor. However, in either case several handlings of the bottles are required, entailing considerable labor and expense. My machine is designed to obviate the above-stated objections, and to this end the tank is arranged vertically and extends from floor to floor, thereby consuming a minimum amount of floor-space and utilizing the head room, and, further, the construction is such that the bottles may be fed at the lower floor, then carried through the tank and cleansed, and eventually discharged or delivered automatically at the upper floor where required for use. The arrangement is also such that the bottles may, if desired, be fed to the machine at the upper floor."

Other differences are pointed out and relied on by counsel to distinguish the Volz construction from the earlier machines referred to. These differences may be readily seen in Loew Supply & Mfg. Co. v.

---

[1] No. 647,082, Goetz, April 10, 1900—"bottle-washing machine"; No. 676,920, Schreiber, June 25, 1901—"bottle-cleaning machine"; No. 687,655, Scheid, November 26, 1901—"bottle washing and sterilizing apparatus"; No. 688,740, Kissel and Parsons, December 10, 1901—"bottle washing and sterilizing machine"; No. 690,563, Cobb, January 7, 1902—"bottle-washing machine"; No. 694,371, Goetz, March 4, 1902—"bottle-cleaning machine."

Fred Miller Brewing Co., 138 Fed. 886, 71 C. C. A. 266 (C. C. A. 7), where it was held that the Cobb patent, supra, No. 690,563, for a bottle-washing machine, was not infringed by the Volz machine; a drawing of each of the machines is there shown. Admittedly the validity of the letters patent covering the Volz machine was not in issue in that case. The question was simply whether the Volz machine infringed the Cobb patent; but the crowded condition of the bottle-soaking machine art, certainly as to machines like Cobb's comprising the horizontal cleansing tank, was thus pointed out by Judge Baker (138 Fed. 889, 71 C. C. A. 269):

"There is room for such an adapter to have only a specific patent for his particular form of adaptation, and he is not privileged to exclude others from gleaning in the same general field. * * * The claims in suit, if construed generically, would be void; limited to the specific form of adaptation, we do not find them infringed."

In the instant case advantages other than those already mentioned are claimed in respect of the Volz machine. For example, it is insisted as to his upright tank: The cleansing solution is kept clearer, more evenly heated, more active, and consequently more effective, in the vertical than in the horizontal tank; the chains carrying the bottle-racks are more easily balanced and less liable to drag, and hence more economically operated, in the vertical than in the horizontal type. As to Volz's bottle-racks: They are rectangular in form and composed of metal, two of their opposed sides comprising open frame-work, the other two sides being of sheet-metal containing circular openings which on one side are suitable in size to receive the bodies of the bottles and on the opposite side to receive the necks of the bottles; each rack is provided at its central transverse axis with fastening lugs for securing it in position between the two endless conveyer-chains, and is also disposed at an oblique angle to the plane of the chains; thus the racks are in succession presented in a downwardly inclined position to the operator at the feeding point; the bottles with the necks thrust through the racks are held by gravity in their upward movement on the outside of the tank until they pass sprocket-wheels *21*, when the oblique position of the bottles is reversed, and they are held in place in their downward passage into the tank by contact between their bottoms and a guard suitably disposed; this movement is continued thence until sprocket-wheels *23* are passed, when the bottles are carried upwardly again (in the same positon as in their first upward movement) to sprocket-wheels *16* and thence downwardly again with their bottoms in contact with a guard until they are automatically discharged into the rinsing-tank. See Fig. 1 of Volz patent drawings, 138 Fed. at 887, 71 C. C. A. 266. The relation of this general description of the Volz device to the claims of the patent is sufficiently illustrated by reference, for example, to claims 2 and 15, copied in the margin.[2]  By extending the necks of the

[2] "2. A bottle-soaking machine comprising a vertical tank, rolling supports arranged above two opposite sides of the tank, a rolling support arranged within the tank, an endless bottle conveyer traveling over said supports and around two opposite sides and bottom of the tank, and a rinsing-tank located in close proximity to one of the rolling supports which are situated above the

bottles through the openings in the racks, as stated, it is contended that in the movement of the bottles through the cleansing operation abrasion of their crown-rims is substantially avoided and their condition for re-capping better preserved; also that this method of preserving the crown-rims and of exposing the inside and outside of the bottles to the cleansing solution is superior to that involved in the closed form of bottle pockets used in the horizontal tanks.

It is to be observed, however, that the idea of a vertical instead of a horizontal tank in which to cleanse bottles did not originate with Volz. The Dumke patent, No. 530,583, of December 11, 1894, was for a bottle-washing machine comprising a vertical tank; and, although the general appearance of the machine differs from that of the Volz machine, the essential operating features of the machines are very much alike. For instance, their sprocket-wheels and endless chains are similarly disposed; mechanical equivalency is found in the transversely adjusted bottle-boxes of the Dumke machine and the transversely secured bot-tle-racks of the Volz machine. True, the means of holding the bottles in place in the two devices differ, yet in both the bottles are held in a position oblique to the plane of the chains, and are conveyed similarly through the tank and thereafter automatically discharged. True, also, Dumke provided for feeding and discharging the bottles on the same floor, feeding on one side and discharging on the opposite side of the machine; but it is apparent from the drawings that the bottles might have been discharged as readily at an upper floor as upon the same floor; indeed, the specification distinctly contemplated by way of illustration a distance of 15 feet between the centers of the upper and lower sprocket-wheels; and any necessity for use of the cleansed bot-tles on an upper floor would seem to have been plainly suggestive of such a change in place of delivery. We observe, further, that the Dumke machine is called a "bottle-washer," and the use of water alone in the tank is mentioned in the specification, but the machine is to be so gauged in its operation as to submerge the bottles for a long period of time and so as to insure "a very thorough cleansing"; and, whatever may be said of any difference in cleansing qualities of the two ma-chines, this can only be a matter of degree. The patent of Warning, No. 663,142, December 4, 1900, a "machine for cleaning lye from the exterior of lye-containing cans," shows a vertical tank having sprocket-wheels above its top and sprocket-wheels within and near the bottom of

sides of the tank, said conveyer being arranged to receive bottles along one of the side stretches of the conveyer outside the tank, and, after carrying them through the tank, to discharge them directly into the rinsing-tank where-by the bottles are not given an opportunity to dry."

"15. A bottle-soaking machine comprising a tank, an endless conveyer ar-ranged to travel therein, a series of bottle-racks operatively connected with the conveyer and arranged transversely and obliquely to the plane or line of travel of the conveyer, a guide arranged within the tank adjacent the line of travel of the conveyer to prevent the bottle from falling out of their racks, each rack consisting of a frame having on its inner or rear side a series of openings larger than the necks of the bottles and through which such bot-tle-necks pass and project."

the tank, endless conveyer-chains passing around the wheels, openwork buckets connected to the chains for carrying the cans through hot water contained in the tank and finally discharging the cans automatically into a receiving trough. And the Volz plan of uniting the feature of an elevator with that of a bottle-soaking machine—that is, of associating a vertical or upright tank with conveyer-chains and bottle-racks both for cleansing bottles and elevating them from one floor to another—is not only ascribable to the teachings of the Dumke patent, but in practical effect was an adaption of Dodge's elevator, patented February 8, 1881, No. 237,501; and, further, as Judge Baker points out in the Loew Supply Co. Case, supra, 138 Fed. at 889, 71 C. C. A. 266, "Volz's rack is an adaptation of Dodge's integral centrally-secured buckets to bottle-holding purposes." Moreover, there is evidence tending strongly to show that in the summer of 1901 the defendant circulated among the brewers and brewmasters throughout this country, Mexico and Canada, printed publications and diagrams of a bottle-soaking machine which was designed, by means of an endless conveyer suitably disposed and operated over sprocket-wheels, to receive bottles at one floor, pass them through a horizontal tank, and thence to an upper floor, where they were to be automatically and directly discharged into a rinsing tank; and, in view of the number of witnesses produced and their apparent familiarity with circumstances calculated to enable them to fix time and place in connection with the production and circulation of the printed publications and diagrams themselves, it must, in relation with the other matters before pointed out, be concluded that Volz's idea of associating the feature of an elevator with a bottle-soaking machine was not new.

Now, when the state of the art thus far commented on is considered, it is clear that at the time Mr. Volz designed his machine there was but slight room for material advancement; certainly if his device was not in reality anticipated, the elements of his claims, as well as the result he achieved were old; and his combination was so nearly in identity with the prior art as to admit at most of only a restricted construction of the claims in issue. We say this in full recognition of the rule that invention may consist in combining old elements so as to produce either a new and beneficial result or an old result in a new and substantially better way. Proudfit Loose-Leaf Co. v. Kalamazoo Loose-Leaf B. Co., 230 Fed. 120, 127, 144 C. C. A. 418 (C. C. A. 6), and citations. Before passing upon the question of patentability, however, we shall have to consider an unpatented machine which is claimed to be a complete anticipation of the patent in suit. This machine comprises a tank divided into four compartments which are in part vertical and in part oblique, but all greater in height than width; a bottle conveyer composed of two parallel endless chains with bottle receptacles or racks disposed between and with their ends bolted to the chains, such receptacles having a series of openings on one side with a series of openings in registry therewith on the opposite side and so forming pockets into which the bottles are inserted with their necks protruding. The chains in their travel around the outer sides and bottom of the tank are suitably

guided and sustained, and in their travel downwardly and upwardly through each of the compartments they pass over sprocket-wheels properly disposed. The course of the chains along the outside of the front and rear elevations of the tank and within each of the compartments is oblique. The bottle-racks extend on both sides of the respective chains, and the bottles are held in place in portions of their course by gravity and in the other portions by guards appropriately placed. While at first the pockets were not oblique to the plane of the chains, substantially the same effect was secured through the oblique paths of the chains; and this feature was shortly afterward changed by arranging the bottle-pockets obliquely to the plane of the chains. Bottles are fed into the pockets at one end of the machine, and after passing through the compartments of the tank are automatically discharged directly into a rinsing-tank at the opposite end.[3] It is true that this is a single-floor machine, but the evidence shows that the feature of elevating the bottles to an upper floor before automatically discharging them involves only an extension of the conveyer and removal of the rinsing-tank; and since the idea itself was not new in the art at the date of the patent in suit, any need of such a plan was well within the scope of mechanical skill. Apart then from the question of priority, presently to be considered, it is safe to say that in practical effect, certainly in every patentable sense, the machine embodies the patent in suit; indeed, the controversy upon this part of the case is not so much as to patentable identity of the two machines as it is with respect to a question of priority in conception and reduction to practice of the machines. In saying this we have in mind a statement in the brief for appellant that even the existence of the anticipating structure has not been shown beyond a reasonable doubt; but we do not discover any testimony which tends to sustain the statement, and, on the contrary, we find testimony which clearly and convincingly establishes the fact that the structure was installed and successfully used in the Anheuser-Busch brewery in St. Louis, Mo., and that it was still there when the testimony herein was taken. We thus come to consider the time when the machine was constructed and reduced to practice.

[1, 2] It scarcely need be said that anticipation is a complete defense; for, in view of our patent laws and of the long-settled rule of decision, if the Volz machine or its equivalent was "known or used by others in this country" before his "invention or discovery thereof," the patent could not rightfully have been issued; such prior knowledge and use by a single person would have been sufficient to require denial

---

[3] This device may be better understood by reference to patent No. 736,209 to Busch, Gull, and Barry, August 11, 1903, the date of issue also of the patent in suit. It will be seen, however, that the patented device (No. 736,209) shows the sides of the compartments to be not simply in part vertical, but wholly so, and that the paths of the chains are likewise vertical. The application for this patent was made November 13, 1902, while that for the patent in suit bears date July 22, 1902; and since Volz's constructive reduction to practice thus preceded that of the Busch-Gull-Barry patented device, the latter cannot, in that sense of reduction to practice, be regarded as an anticipation of the former. Automatic Weighing Machine Co. v. Pneumatic Scale Corp., 166 Fed. 288, 293, 92 C. C. A. 206 (C. C. A. 1) and citations.

of the patent.[4]  The defense of anticipation rests heavily upon the defendant.  It is settled that as respects an unpatented device, claimed to be a complete anticipation of a patent in suit and depending as to its existence and use upon oral testimony, the proof must be clear, satisfactory, and beyond reasonable doubt.  The Barbed Wire Patent, 143 U. S. 275, 284, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; Deering v. Winona Harvester Works, 155 U. S. 286, 300, 15 Sup. Ct. 118, 39 L. Ed. 153; Adamson v. Gilliland, 242 U. S. 350, 353, 37 Sup. Ct. 169, 61 L. Ed. 356; Columbus Chain Co. v. Standard Chain Co., 148 Fed. 622, 629, 78 C. C. A. 394 (C. C. A. 6); Peelle Co. v. Rashkin, 222 Fed. 293, 297, 138 C. C. A. 19 (C. C. A. 2); H. Mueller Mfg. Co. v. Glauber, 184 Fed. 609, 618, 106 C. C. A. 613 (C. C. A. 7); Drum v. Turner, 219 Fed. 188, 196, 135 C. C. A. 74 (C. C. A. 8); Diamond Patent Co. v. L. E. Carr Co., 217 Fed. 400, 402, 133 C. C. A. 310 (C. C. A. 9).  It is to be observed that the learned trial judge, the present Mr. Justice Clarke, held that this unpatented machine was an anticipation of the Volz machine.  Since it is not shown that any of the witnesses were examined in court, and since it expressly appears that one of the main witnesses as to anticipation testified by deposition, the appellant is entitled to the independent judgment of this court concerning the sufficiency of their testimony.  Peelle Co. v. Rashkin, supra, 222 Fed. at 294, 138 C. C. A. 19.

Rudolph Gull, who had been a chemist of the Anheuser-Busch Brewing Association from 1893, testified in relation to the anticipating machine.  He had much to do with its origin and installment.  He said there were eight bottle-soaking or washing machines in use at the Anheuser-Busch brewery, and that the first one was "put in operation" in February or March, 1902.  This is the machine that is claimed to anticipate the one in suit and has already been sufficiently described.  The witness gave the name and address of the builder of the machine and, against objection, presented a blueprint bearing date February 24, 1902, and purporting to show in diagram the form and operating parts of a machine which is like the one before described as the claimed anticipating machine.  He testified that he was present while the machine was in course of erection at the Anheuser-Busch brewery, that he had seen the machine in successful operation, and that the blueprint correctly described it.  There are other features of his testimony which tend to show his familiarity with the conception of the machine; he took part in designing it, and during the progress of its construction he was often at the place of business of the company (Barry-Wehmiller Machinery Company) that built it; he was not contradicted

[4] Section 4886 (Rev. St.) as amended Act March 3, 1897, c. 391, § 1, 29 Stat. 692 (Comp. St. 1916, § 9430) and fourth paragraph of section 4920, Rev. St. (Comp. St. 1916, § 9466); Coffin v. Ogden, 85 U. S. (18 Wall.) 120, 124, 21 L. Ed. 821; Brush v. Condit, 132 U. S. 39, 48, 10 Sup. Ct. 1, 33 L. Ed. 251; Bedford v. Hunt, 1 Mason, 302, 303, Fed. Cas. No. 1,217; and Reed v. Cutter, 1 Story, 590, 597, 598, Fed. Cas. No. 11,645: both decisions by Mr. Justice Story on the circuit; Allen v. Steele (C. C.) 64 Fed. 793, 795, 796; Imperial Brass Mfg. Co. v. Nelson (C. C.) 194 Fed. 165, 167, affirmed 203 Fed. 484, 499, 121 C. C. A. 666 (C. C. A. 7); Wayman v. Louis Lipp Co. (D. C.) 222 Fed. 679, 694; Benthal Mach. Co. v. National Mach. Corporation (D. C.) 222 Fed. at page 930, 931-933.

and, on the contrary, was corroborated. It results that the blueprint was rightly received in evidence in connection with the testimony of the witness and as illustrative of it. Hall v. Conn. Mut. Life Ins. Co., 76 Minn. 401, 408, 79 N. W. 497; Johnston v. Jones, 66 U. S. 209, 222, 17 L. Ed. 117; 1 Wigmore on Ev., §§ 793, 794. Mr. Gull testified:

"The machine illustrated by the blueprint is in the bottle wash house of the Anheuser-Busch Brewing Association on 11th and Pestalozzi streets, where it has been ever since it was first erected. No material changes have been made in it since that time. The machine was almost erected at the time the blueprint is dated. I got the blueprint from the Barry-Wehmiller Machinery Company, and I know that drawings of the device shown in the blueprint were made prior to the drawings from which this blueprint is made. There had been some drawings made of the device shown in the blueprint, prior to the drawings from which this blueprint was made.

"I couldn't say positive at what time the idea of the machine on the blueprint was first conceived. It was a matter of working together of the patentees, some time in the year 1901. We came to the first idea about building a machine of this character and I recollect that we were working out the plans for the construction of a soaking tank of that kind, at the end of September or the beginning of October, 1901."

This witness further testified that the tank of the machine was delivered in the "second part of January, 1902," and that the machine was "put in operation the second part of February or the first of March, 1902." The witness produced the account of the builder of the machine for its cost, which is dated March 31, 1902, and bears the indorsement of an order dated May 29, 1902, signed by Mr. Busch, of the Anheuser-Busch Company, directing payment of part of the bill. The witness testified that the signature and date were in the handwriting of A. A. Busch, and also that the bill was rendered for the completed machine, and so enabled him to fix the time when the machine was put in operation as in February or March, 1902. Mr. Tolkacz, president of the Missouri Boiler & Sheet Iron Works, testified that his company constructed the tank of the machine for the Barry-Wehmiller Company in the months of December, 1901, and January, 1902, and delivered it to the Anheuser-Busch brewery prior to January 20, 1902. He fixed the time of delivery by reference to his company's daybook containing the charge for the tank, January 24, 1902. He identified the machine by stating that the blueprint before mentioned—

"'is a duplicate of a blueprint or possibly the original, which we used in the construction of the first soaking tank built by us for the Barry-Wehmiller Machine Company and delivered to the Anheuser-Busch Brewing Association's old washhouse—I think it is No. 1."

Mr. Jenne, who had been the millwright for the Anheuser-Busch Company for 25 years, also fixed the time of installing the machine as in February and March, 1902, stating that the Barry-Wehmiller Company had the contract for "the whole thing," and that Tolkacz built the tank for that company; and, as respects the blueprint in question, he said: "This is the blueprint of the machine that I am testifying about." Mr. Baird, one of defendant's counsel, testified that he and Mr. Loew visited the Anheuser-Busch brewery in the early part

of May, 1902, and that he (Baird) visited the brewery again in December, 1912; that he saw a bottle-soaking machine in the brewery on both of these occasions, which he identified by reference to the blueprint already mentioned and by a statement that the blueprint shows in diagram the very machine he had seen; that these visits were made for professional objects, that on the first one he and Mr. Loew, whose testimony is to the same effect, made special examination of the machine, and Mr. Baird produced convincing data to show that the first visit occurred between the 3d and 10th of May, 1902. Counsel for appellant in several ways criticize the testimony of these witnesses, but we do not discover that they offered any evidence tending to refute the testimony. It is said, for instance, that Mr. Busch and the bookkeeper of the brewery might have been called, and this is true; but we are not satisfied that the witnesses who actually testified in connection with the unquestioned data they produced can be fairly discredited because of the failure to call the other persons alluded to. It is not pretended that plaintiff could not itself have called Mr. Busch and other persons, say from the companies that made the tank and constructed the operating parts of the machine (apart from Mr. Barry who died in 1904), if there was reason to believe that the showing so made ought not to be credited. It is hard to conceive that the evidence which tends to establish, for example, the existence and operation of this machine, as also the accepted account of the machine-builder against the Anheuser-Busch Company, and particularly the charge in the daybook of the tank-builder against the machine-builder, with their respective dates, could not have been met and overthrown if indeed the evidence is not true. Three of these witnesses are commended by their long connection with business concerns, and they are corroborated in a material respect by one of the counsel of record in this cause. There are other features of the record that lend support to the testimony of these men, but we do not think it necessary to dwell longer on the subject; in a word, the evidence is free from reasonable doubt and is persuasive of the fact that the anticipating machine was in course of construction as early at least as December, 1901, and was in successful operation early in March, 1902. Still other matters and their effect upon the foregoing evidence remain to be considered.

[3] Plaintiff claims that Volz conceived his invention in 1901 and disclosed it to others in the spring and again in the fall of that year, that he made an attested sketch of it February 1, 1902, and reduced the invention to practice by completing and filing an application for a patent, April 10, 1902. Defendant insists, however, that Volz abandoned that application, and filed the one of July 22, 1902, upon which alone the patent in suit was issued, August 11, 1903. The object of offering evidence to show an earlier conception than is indicated by the July application was, of course, to carry the date of his invention to a time prior to any of the anticipating features of the defendant's evidence. Evidence to this effect was admissible, but it was incumbent on plaintiff to establish such earlier date by unequivocal and convincing proofs. Defendant having shown with certainty anticipation of the patent in suit, as it appeared in the letters patent, it became necessary for plaintiff, as Mr. Justice Bradley said in Clark Thread

Co. v. Willimantic Linen Co., 140 U. S. 481, 489, 492, 11 Sup. Ct. 846, 851, 35 L. Ed. 521, "in rebuttal, to show, if not with equal certainty, yet to the satisfaction of the court," that Volz invented his machine prior to the date of such anticipation. Michigan Cent. R. Co. v. Consolidated Car Heating Co., 67 Fed. 121, 129, 14 C. C. A. 232 (C. C. A. 6); Columbus Chain Co. v. Standard Chain Co., supra, 148 Fed. 622, 629, 78 C. C. A. 394 (C. C. A. 6); New England Motor Co. v. B. F. Sturtevant Co., 150 Fed. 131, 137, 80 C. C. A. 85 (C. C. A. 2); Charles Hunnicutt v. A. B. Gaston Co., 218 Fed. 176, 177, 134 C. C. A. 56 (C. C. A. 3); Consolidated Ry., etc., Co. v. Adams & Westlake Co., 161 Fed. 343, 350, 88 C. C. A. 355 (C. C. A. 7). It is to be observed, moreover, that the evidence must satisfactorily show, both that Volz possessed the earlier conception claimed, and that he thereafter exercised reasonable diligence in reducing his conception to practice. Christie v. Seybold, 55 Fed. 69, 76, 5 C. C. A. 33 (C. C. A. 6); Automatic Weighing Mach. Co. v. Pneumatic Scale Corp., 166 Fed. 288, 301, 92 C. C. A. 206 (C. C. A. 1).

In our consideration of the evidence offered in this behalf we meet with serious difficulty concerning both matters which the plaintiff was thus bound to make plain. In the first place, if the testimony be accepted as to Volz's disclosures in the spring and fall of 1901, his idea was to produce a two-story bottle-soaking machine which would receive the bottles at a lower floor and discharge them upon an upper one. He had since 1887 been engaged in a brewery at Milwaukee and in such capacities as to become familiar with its machinery and bottling department; and, notwithstanding his own experience and the existence of such patents as those of Dumke and Dodge and the circulation before considered of printed publications and diagrams in the summer of 1901 showing a bottle-soaking machine that was designed so to receive, elevate, and discharge bottles, Volz could only in a meager and tentative way describe the structure he claims to have conceived in the spring of 1901; and while there is testimony to the effect that in the fall of that year he showed to others several pencil sketches of parts of a two-story machine, yet it is not pretended that any of the sketches were in any sense complete; and none of them was regarded as of sufficient importance to preserve. Further, although Volz's sketch of February 1, 1902, shows, as plaintiff's counsel state, "a tank somewhat inclined, and having an endless carrier traversing the interior of the tank and running around the outside thereof with bottle-pockets of the type used in the old Loew machine," still when the main figure and certain smaller ones shown in the sketch are compared with the evidence as to Volz's ultimate conception, the sketch would seem to have been nothing more than a paper experiment; it was not adhered to; and it is noteworthy that while the sketch purports to bear the signatures of Volz and two witnesses, these witnesses were not called to testify, nor were their signatures proved except by Volz. The effect of this omission is not materially modified. True, Volz testified that when he explained his invention to the draftsman for the purpose of having drawings prepared to accompany his first application for a patent, he showed the sketch to the draftsman, who testified that it was "presented by the inventor to me; this sketch

or one similar to it," but the time of this interview is not shown; and so it results that the date of the sketch must depend solely on the testimony of one man, the patentee. Among the disclosures of this sketch are two rectangular figures which in his testimony Volz called plates on "bridge-work" and another figure which he said "apparently included a bottle with the head and butt sticking out"; but at most these could not have been more than tentative contrivances, for according to Volz's own testimony he regarded them as unfit for the "patent-stopper bottles" which he says were then in large measure used by the brewers. It is urged that these figures disclose an open-frame bottle-rack. This is not intelligibly disclosed by the sketch nor satisfactorily shown by the evidence; and the reason given for not adopting such a rack, and selecting the old Loew type instead, is inconsistent with the facts shown concerning the rack actually used in the Anheuser-Busch machine. We are confirmed in these views by the Volz application for a patent, April 10, 1902; for while the tank and conveyer there shown and the tank and conveyer shown in the sketch are similar both in form and position, still nothing like the open-frame bottle-rack claimed to be represented on the sketch is either mentioned in the specification or found in the drawings of the April application. The application, according to the record of Volz's solicitor, appears to have met with "objection on the part of the Patent Office," though it is not shown that anything was ever done to have the objection considered or the application allowed. As we have seen, a new application was filed July 22, 1902, and upon it alone the patent in suit was issued, August 11, 1903.

We thus come to the question whether these earlier disclosures are such as to indicate a conceptive relation between them and the patent in suit. If so, it cannot be said that there was an intent to abandon the April application. The reason stated for not prosecuting the application is that it was decided to change to a vertical tank. This would scarcely signify a purpose to abandon any features of the old application which, in point of equivalency, were traceable into the new one. The effect would be to show rather that both were designed, at least so far as they disclosed features in common, to constitute one continuous application within the true intent of the patent law. Godfrey v. Eames, 68 U. S. 317, 325, 326, 17 L. Ed. 684; Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 500, 23 L. Ed. 952; Corrington v. Westinghouse Air Brake Co., 178 Fed. 711, 713, 103 C. C. A. 479 (C. C. A. 2); Victor Talking Machine Co. v. Duplex Phonograph Co. (C. C.) 177 Fed. 248, 253, per Judge Knappen; this is not a case of rejection of application by the Patent Office and acquiescence therein within the meaning of section 4894, Rev. Stat., as amended by Act March 3, 1897, c. 391, § 4, 29 Stat. 693 (Comp. St. 1916, § 9438), and so the case is distinguishable from cases like Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 137 Fed. 80, 83, 70 C. C. A. 1 (C. C. A. 8); but so far as any material addition to or variance from the first application may be found in the second one, such addition or variance cannot be sustained on the first application. Railway Co. v. Sayles, 97 U. S. 554, 563, 24 L. Ed. 1053. In considering the question of identity between the two applications, we may for the moment lay to one

side the inquiry into Volz's diligence. We are concerned of course only with the five claims in issue of the patent in suit. These claims each comprise a tank, rolling supports, and an endless conveyer, claims 2, 4, and 21 calling for a vertical or upright tank, while claims 7 and 15 call for "a tank." In view of the prior art, all these elements in themselves and in combination are too old to indicate novelty in any of the claims. They appear, however, in the first application. The elements that may for the present be assumed to involve some degree of novelty are: (a) Proximity of the rinsing-tank of claim 2 to the upper rolling support so as to discharge the bottles into the rinser before they are given opportunity to dry; (b) track and guard of claim 4, the first to guide the conveyer along part of its course, and the second to keep the bottles in the racks through portions of their movement; (c) the open frame-work bottle-rack of claim 7 to hold a single row of bottles with the necks projecting through; (d) disposing the bottle-racks and the bottles according to claim 15 obliquely to the plane of the conveyer; (e) elevating the bottles as provided by claim 21 through a vertical tank extending from floor to floor. All these features appear more or less clearly, at least for purposes of identifying conception and completion, in either the specification or drawings of the April application, excepting certainly the open frame-work bottle-rack of claim 7 and possibly the oblique relation required by claim 15 of the bottle-racks and the bottles to the plane of the conveyer, though the equivalent of this oblique relation may have been in some degree achieved through the slight inclination from the vertical of the tank and conveyer.

We have further to consider the Volz sketch, bearing date February 1, 1902. The principal disclosure of the sketch shows sufficient correspondence with the first application to signify conceptive relation; but we cannot regard the evidence adduced to sustain the date appearing on the sketch as fairly sanctioned by the standard of proofs which the prevailing rule of judicial decision exacts. The effect of this is to leave in doubt the time, prior to the date of execution of his first application, when Volz can be safely said to have possessed a definite conception. True, an account is shown between Volz and his solicitor, which contains a charge and partial payments in cash beginning March 3, 1902, and ending April 2d following, for fees in respect of the first application. This account, however, does not solve the question of date, for the habit of the solicitor was to require of a new client, as Volz was, payment of fees in advance, and the draftsman before alluded to testified that there was "about eight hours' work on the drawings." In view of this uncertainty we do not feel justified in ascribing to Volz a definite conception as of a date prior to the execution of his first application, April 2, 1902.

[4] We must return briefly to Volz's claim that he conceived his invention and disclosed it to others in 1901. Apart from what we have said before on this subject, we think that prior to the execution of his first application for a patent Volz did not exercise reasonable diligence in adapting and perfecting the invention. Diligence is of the essence of a proper relation between the conception and the reduction to practice of an invention, and must consist of a degree of effort that can

fairly be characterized as "substantially one continuous act." Christie v. Seybold, supra, 55 Fed. at 76, 5 C. C. A. 33 (C. C. A. 6); and see Automatic Weighing Mach. Co. v. Pneumatic Scale Corp., supra, 166 Fed. at 298, 301, 92 C. C. A. 206 (C. C. A. 1) and citations. Volz's delays and the vagueness of his pencil sketches prior to the sketch bearing date February 1, 1902, have already been commented on. We are not unmindful of the claim that Volz's financial condition brought about his delay; but this is not warranted by the evidence. True, Volz seems to have believed he should first secure financial assistance to obtain a patent and manufacture the patented device. He expended valuable time in endeavoring to associate himself with some person of means to accomplish both these objects; but we do not see, and the evidence does not explain, why he might not have separated the two objects and pursued the one that was vital to the other, i. e., to complete his conception by the preparation and filing of an allowable application for a patent. The truth is that after Mr. Scarborough had consented to join with him in the double enterprise, Volz himself paid the costs incident to his application of April 10, 1902; for, after making somewhat contradictory statements on the subject, he testified: "I paid, with my own money, for the preparation and filing of the application" of April 10, 1902. When this admission and the theory of a definite conception of the invention in the spring of 1901 are considered in connection with Volz's testimony that he alone prepared the sketch bearing date February 1, 1902, it is impossible to reconcile his course prior to April, 1902, with any claim of diligence. Christie v. Seybold, supra, 55 Fed. at page 77, 5 C. C. A. 33; United Tunnel Improvement Co. v. Interborough Rapid Transit Co., 207 Fed. 561, at 569, 125 C. C. A. 211, per Judge Hand, concurred in by Court of Appeals, 207 Fed. at 571, 125 C. C. A. 211 (C. C. A. 2).

It must follow, as before intimated, that the patent in suit should in respect of claims 2, 4, 15, and 21 be regarded as having been conceived and reduced at least to constructive practice as early as the date of execution of the first application, April 2, 1902; but that as to claim 7, the date of conception and constructive reduction to practice is to be treated as of the time of filing the second application, July 22, 1902. It need not be stated that the proximity in time between the putting into operation of the anticipating machine above considered and the Volz conception is calculated to give a court much concern touching the liability to error in either of the conclusions reached. There are other considerations here, however, which lead to a wider difference in point of priority. If it were assumed that the Volz sketch could safely be given an earlier date, even the date it bears, this would not aid the plaintiff; for the evidence concerning the origin of the anticipating machine seems to us indubitably to show that it was in course of construction as early as December, 1901. It hardly is conceivable that a definite conception and plan of the machine did not precede the commencement of its construction; in truth the evidence shows this, if evidence is necessary to establish such a fact. This must settle the question of priority, since it is not claimed, and it could not well be, that there was any lack of diligence in completing the machine after its construction was once begun.

243 F.—25

[5] And as matter of law we see no difference between the right of a defendant to show the time of conception of an unpatented anticipating device, as also diligence in reducing it to practice, and the right of a plaintiff to do this in respect of a patented device. We conceive this to be the necessary effect of section 4886 and section 4920, paragraphs second and fourth, of the federal Revised Statutes; and these statutory provisions seem to have been substantially complied with in the second and third paragraphs of the answer when read in connection with the eighth paragraph. It cannot be that a patentee can escape the defenses either that he "unjustly obtained the patent for that which was in fact invented by another, who was using reasonable diligence in adapting and perfecting the same" (second par. § 4920), or that "he was not the original and first inventor or discoverer of any material and substantial part of the thing patented" (fourth par. Id.), whether the anticipating object is patented or unpatented. The statute makes no distinction in this regard; it is the fact of prior invention, not the nature of the right under which the invented device is held, that the statute treats as a defense. As Judge Colt said in Automatic Weighing Mach. Co. v. Pneumatic Scale Corp., supra, 166 Fed. at 301, 92 C. C. A. 219 (C. C. A. 1):

"No sound reason has been advanced why the doctrine of diligence should not apply to a patentee as well as to an inventor who has not secured a patent. On the other hand, any such distinction in favor of patentees is not in harmony with the patent laws."

Again, when speaking of Mr. Justice Story's opinion in Reed v. Cutter, Judge Colt said (166 Fed. 302, 92 C. C. A. 220):

"According to Reed v. Cutter [Fed. Cas. No. 11,645], * * * section 15 of the act of 1836 (containing in substance pars. 2 and 4, section 4920) secures to the first-inventor the prior right, provided he uses reasonable diligence in adapting and perfecting his invention, and this rule applies to all inventors, whether patentees or otherwise."

[6] In view of the prior art, including the effect of the unpatented machine, as herein considered, the decree must be affirmed.