## TREAT *versus* CHIPMAN.

The Colonial Ordinance of 1641 presents no rule for apportioning flats to the owners of the adjoining uplands.

Neither have the decided cases entirely agreed in furnishing a rule for that purpose.

Though there may be cases, in which the rule laid down in *Emerson* v. *Taylor*, 9 Greenl. 42, cannot be applied, there has been found no serious difficulty in extending it to the flats in the larger rivers and coves of this State.

*It seems*, that a title to flats may be acquired by an occupation of them by one of the owners of the adjacent lands, if continued fifty years, adverse, exclusive, open and notorious, although commenced without regard to any fixed rule of apportionment.

An occupation of flats by one of the owners of the adjacent lands, commenced without regard to any fixed rule of apportionment, and continued under a claim of right for fifty years, with the knowledge of the other owner, may furnish a presumption that the flats had been apportioned by such owners in accordance with such occupation.

Fences of stakes or twigs, erected for fish weirs upon flats covered by water, though used for taking fish during only a *part* of each year, may sufficiently evidence an occupation, with claim of ownership of the flats, upon which such fences are erected.

ON FACTS AGREED. TRESPASS *quare clausum.* The plaintiff is the owner of the lot marked "Treat" on the plan. The defendant is the owner of the lot marked "Chipman." The deeds under which the parties severally claim bound them "on and by Penobscot river." Each of the dotted lines upon the plan represents an extension below low water mark, of the upland line of the lot; and the parties and those under whom they claim, have occupied in conformity to said dotted lines by building fish weirs, and occupying them during the usual season for taking fish, annually, for more than fifty years. Said occupation by each has been exclusive and uninterrupted until the spring of 1852, when the plaintiff erected a weir, the location of which is marked upon the plan, a portion of it being above and a portion below low water mark. On the first day of July, 1852, the defendant entered and took down that portion of said weir which extended over the line, to which he had always occupied; — said line being a continuation of the upland line (between his land and that of the plaintiff,) extended to low

water mark. This is the trespass alleged in the plaintiff's declaration. Both parties claim to own the premises on which said weir was built and the right to occupy the same exclusive of the other; and whatever was done by both was in the exercise of what they claim to be their legal right.

A nonsuit or default is to be entered according to the legal rights of the parties.

* Trespass complained of consisted in removing the portion of the weir south of the dotted line, L. D.

The question presented by the parties was, whether the line, between the uplands of the parties, should be continued *on the same course* to and beyond low water mark; or whether it should be on a different course after leaving high water mark.

The defendant contends that the upland line should be continued on the same course. The plaintiff contends that a base line should be drawn from the point marked A. to the point marked B., and that the dividing line below that should be at right angles to it.

*W. G. Crosby,* for the plaintiff.

*Alden,* for the defendant.

SHEPLEY, C. J. — In the decided cases there has not been a perfect agreement respecting a rule to be applied to apportion flats to the owners of the adjoining uplands. There does not appear to have been any difference of opinion, that the Colonial Ordinance of 1641, makes no provision for it; that the intention was to have the flats apportioned justly and equally to the riparian proprietors; that this cannot ordinarily be effected by an extension over the flats of the lines bounding the uplands.

In the case of *Emerson* v. *Taylor,* 9 Greenl. 42, this Court presented a rule believed to be generally applicable, which would effect an equal and just apportionment; and it has been affirmed in the cases of *Treat* v. *Strickland,* 23 Maine, 234, and of *Kennebec Ferry Co.* v. *Bradstreet,* 28 Maine, 374.

The rule adopted in Massachusetts in the case of *Rust* v. *The Boston Mill Corporation,* 6 Pick. 158, appears to have been recognized in the cases *Sparhawk* v. *Bullard,* 1 Metc. 95; *Ashby* v. *Eastern R. R. Co.* 5 Metc. 368, and *Piper* v. *Richardson,* 9 Metc. 155. While a different rule was deemed to be necessary to effect the same purpose in the cases of *Dawes* v. *Prentice,* 16 Pick. 435; *Valentine* v. *Piper,* 22 Pick. 85; *Walker* v. *The Boston & Maine R. R.* 3 Cush. 1, and *Gray* v. *Deluce,* 5 Cush. 9.

In the last named case the rule established by the case of *Emerson* v. *Taylor*, is alluded to with the remark that, " in none of the cases, which we have been called upon to consider, have we found that rule practicable for want of a full survey of all the connected flats in and about Boston." While such has been the state of facts presented in those cases, there has not hitherto been found any serious difficulty in the application of that rule to the flats found in the larger rivers and coves of this State. It has, however, been at all times admitted, that there may arise cases, in which the rule could not be applied.

In the case of *Valentine* v. *Piper*, after alluding to the difficulty of establishing a practical rule, it is said, " but after possession has been long taken and locations originally made without regard to any fixed rule, have come to be settled and fixed by actual and continued possession, the question is much more complicated. Where enough has been done to raise a presumption, that lines have been settled by mutual agreement, considerable force ought to be attributed to actual possession."

Such a settlement of lines upon their flats may be inferred from the long continued occupation of them by these parties in the manner described in their agreed statement.

The doctrine of disseizin, by adverse occupation, was considered to be somewhat extended by the provisions of the statutes of the year 1821, c. 47, § 5, c. 62, § 6. It having been stated in many judicial opinions, that an adverse possession commencing without a recorded title could operate as a disseizin only to the extent of an actual and exclusive occupation exhibited by fences, cultivation or some act equivalent to a *pedis possessio*, these statute provisions were framed to declare, that a possession, occupation or improvement, open, notorious and exclusive, comporting with the ordinary management of similar estates in the possession or occupancy of those, who have title thereto, should be sufficient evidence of disseizin. These enactments were decided to be inoperative so far, as they might act retrospectively, while *it* was

admitted, that they might act prospectively without any viola-tion of the provisions of the constitution. *Proprietors of Kennebec Purchase* v. *Laboree*, 2 Greenl. 275. By an addi-tional Act approved on Feb. 25, 1825, the effect of this de-cision was intended to be obviated by a limitation of those enactments to actions commenced after the fifteenth day of March, then next. The substance of them was retained on a revision of the statutes, c. 145, § 42; and it was admitted by this Court, that the provision might properly operate to effect the rights of parties. *Tilton* v. *Hunter*, 24 Maine, 29.

It is admitted by the agreed statement, that the parties and those under whom they claim, have occupied these flats in conformity to lines to be ascertained by an extension over them of the lines bounding their uplands for more than fifty years, " by building fish weirs and occupying them during the usual season for taking fish annually ;" and that such oc-cupation by each has been exclusive and uninterrupted. It must necessarily have been adverse, for each claimed to occu-py the flats by an extension over them of his title to the up-land. It was of course open and notorious, for it was within the sight and knowledge of the respective occupants.

A " weir" is understood to be formed by a fence of stakes or twigs erected upon flats covered with water and remaining during the whole year, although used for taking fish only during the fishing season. Such fences would seem to ex-hibit the exercise of a claim to be the owner of the flats and a possession of them almost as clearly as by driving piles or by erecting a wharf.

The width of the respective lots is not named in the agreed statement. Nor does it state what portion of the flats was covered by the weirs. It is probable, that a small por-tion only of each lot was so covered, but the agreed state-ment fully authorizes the conclusion, that the lot claimed by each upon the flats was clearly designated by them ; as clearly as their uplands would have been by monuments erected upon the line dividing their lots and recognized by the respective

parties. If such facts should be regarded as insufficient to establish such a possession as would by the provisions of the statute amount to a disseizin, there can be little doubt, that they should be regarded as sufficient to authorize the inference, that the flats had been apportioned to each upland lot according to their long continued and exclusive occupation.

The plaintiff having no legal right to enter upon the flats, to which the defendant had thus acquired a title, can maintain no action for a removal of that part of the weir erected on those flats.                                    *Plaintiff nonsuit.*

Wells, Howard, Rice, Hathaway and Appleton, J. J., concurred.