ALEXANDER RAMSEY *vs.* WILLIAM H. GLENNY and others.

February 16, 1891.

**Adverse Possession Resulting from Mistake in Boundary.**—The rule laid down in *Seymour* v. *Carli*, 31 Minn. 81, as to the effect of an entry upon, and subsequent possession, for more than 20 years, of land beyond the line of his own lot by one of two adjoining owners, although under a mistake as to the location of the line, followed and applied.

**Same—Original Adverse Entry by Tenant—Adverse Possession by Landlord.**—Where the original adverse entry was made by the adjoining owner's tenants, under the same misapprehension as to the location of the line, by the erection of a building, and thereafter the landlord executed and delivered a new lease, to take effect upon the expiration of the old, in which he made special mention of said building as erected upon the leased premises and as a part thereof, his adverse entry upon the premises was at least as early as the day on which the new lease took effect. The landlord's adverse occupancy and hostile possession must have commenced when the tenants entered under the new lease.

**Same—Exception in Deed—Effect on Adverse Claim.**—M. and those who succeeded him made certain deeds and leases while holding adversely to plaintiff by mistake as to the boundary line, in which the premises conveyed and demised were described as the easterly 30 feet of lot 12, excepting the easterly 2 feet previously conveyed, etc. The strip of land in controversy was a part of the excepted 2 feet, but of this M. and his successors had no knowlege when making the deeds and leases. *Held,* that the exception found in these instruments could not be treated as declarations that the parties making them made no claim to the land actually covered by the walls of their buildings, or as conclusive evidence that they did not hold, or claim to hold, adversely to plaintiff.

**Same—Continuity of Possession by Successive Occupants—Evidence.** Upon an examination of the undisputed testimony in this case, it is held that the adverse possession of the premises in dispute for the statutory period, although by different persons, was connected as well as continuous, so that the possession of the true owner did not intervene at any time.

Appeal by plaintiff from a judgment of the district court for Ramsey county, where the action was tried by *Otis,* J., (a jury being waived.)

v.45M.—26

*Davis, Kellogg & Severance,* for appellant.

*Flandrau, Squires & Cutcheon,* for respondents.

COLLINS, J.[1]   Action of ejectment, in which judgment was entered for defendants in the trial court, upon the ground that the premises had been held by the defendants and their grantors adversely to the plaintiff for a period of more than 20 years prior to the commencement of the action.   There was but little controversy over the facts. In the year 1862 plaintiff owned the westerly half of lot 13, block 23, St. Paul proper, and also a strip adjoining the same on the west, being the easterly 2 feet of lot 12 in the same block, upon which he had previously erected a frame building.   One Mack was the owner of the remainder of lot 12.   These lots were about 130 feet in depth, and faced upon Third street.   Mack had, the year before, leased to Nicols & Dean the easterly 28 feet of his lot for a period of five years.   In 1862 he erected for their use and occupancy, as his tenants, a stone building, reaching from the front of his premises back about 75 feet.   Thereafter, but prior to June 4, 1866, the tenants built a shed, extending from the stone building to the rear of the lot, the easterly wall thereof being of stone, and on the same line as the easterly wall of the building.   It was not as high as this wall, but substantially a continuation of it.   Mack supposed and believed when he erected his building that it was upon his own premises, and that the east wall thereof was on the line between himself and plaintiff. His tenants when building the shed supposed and believed that the east wall thereof was upon the leased premises; and both of these parties supposed and believed when the lease was made in 1862 that the line between the tracts of land was that afterwards fixed and occupied by the easterly walls of the building and shed, when in fact the walls of the building and of the shed encroached upon the plaintiff's land along their entire length.   The strip of land in controversy is that covered by this encroachment.   Mack died in 1870, his interest descending to his widow and heirs-at-law, who sold to these defendants in 1883.   These respective owners have been, by themselves or by their tenants, in open and notorious possession of the stone

[1] Vanderburgh, J., took no part in this case.

building and the shed, and the land upon which they stood, from the time the building and shed were erected. Such possession has been continuous and uninterrupted for more than 20 years prior to the commencement of this action, and the fact that the walls were standing all of this period of time was patent to the plaintiff, although he may not have been aware of the fact that any part of the same were upon his land.

It is argued by plaintiff, appellant, that, because Mack and his tenants, Nicols & Dean, entered into the actual possession of this strip of land through mistake, and without any intent to do so, and because the former and those who have succeeded him have held possession without realizing that a part of the stone walls had been built over the line, such possession could not be accompanied with an intent to claim adversely, and hence was at no time hostile to the true owner. But on this point, and to the extent of that part of the disputed strip covered by the wall of the building, the case cannot be distinguished from *Seymour* v. *Carli*, 31 Minn. 81, (16 N. W. Rep. 495.) In that case it appeared that Carli and his grantors had owned and had been in possession of a certain lot for more than 20 years, and that for the same period of time Seymour, Sabin & Co., and their grantors, had owned and been in possession of an adjoining lot, save as to that portion in dispute. More than 20 years prior to the commencement of the action Carli's grantors had erected a house wholly on their own lot, as was supposed, but, by reason of a mistake as to the location of the line, a part of the building was placed on the adjoining lot, then owned by the grantors of Seymour, Sabin & Co., and there it had remained for more than 20 years, under no other claim than that of title to the lot on which the parties intended to erect it. It was held that the actual, exclusive possession of Carli and his grantors was, to the extent of their occupancy, adverse, notwithstanding the original entry and possession thereunder were by mistake. The facts which appear in that case and those here, so far as they relate to the erection of the stone building and its occupancy, are almost identical. No distinction can be made except as to certain documentary testimony, consisting of deeds and leases made by Mack and his successors, to which reference will be made later.

As before stated, the shed was built by Mack's tenants more than 20 years before the commencement of this action, and, had it been erected by him, no difference would exist between the facts concerning it and those which surround the erection and occupancy of the building; the conclusion in the *Carli Case* would apply to the entire strip covered, as it has been, by the easterly walls of the building and shed. The court below found that the shed was erected with the assent of Mack, entry being made on the land under a claim of right as his tenants, and that, in fact, it was the landlord's intention by his lease to cover and embrace, and both landlord and tenants then believed that it did cover and embrace, all of the land upon which the structures were erected. The original lease was not introduced in evidence, having been lost; but it is undisputed that in the description the easterly 2 feet of lot 12 were excluded. The entry subsequently made by the tenants thereon when they built the shed wall was undoubtedly under the belief (common to all parties, it seems) that plaintiff's frame building was upon his westerly line, and consequently the stone building, which was as close to it as possible, was upon Mack's easterly line, and also—a most natural conclusion —that the line in the rear of the building was an extension of that upon which it stood. The testimony sustained the finding as to what was supposed and believed by Mack and his tenants as to the true line when the latter built the stone wall. There was no testimony tending to show that Mack positively or openly assented to the construction of this wall or the shed. But, taking into consideration his belief as to where the line was, that he had put his tenants in possession of the building which stood over the real line, and that the construction and maintenance of the shed was a proper use of the leased premises, his assent may readily be inferred. But this is not very material, for, by means of the lease to John Nicols, of date June 4, 1866, it clearly appears that Mack was then asserting title to that part of the premises upon which his tenants had previously erected the shed wall, for he then, in express terms, leased it for the period of five years, commencing October 22, 1866, on which day the lease to Nicols & Dean terminated. In this instrument special mention was made of the rear of the lot, that part

about 50 feet back of the stone building, and also of the shed or building, as it was therein called, erected by the tenants. The earlier lease to Nicols & Dean, bearing date Octobor 22, 1861, "of the same property," was also therein referred to and recognized. At the expiration of this earlier lease, there was, in contemplation of law, surrender of the entire premises occupied by Nicols & Dean, including both buildings, to Mack, and he at once put the new tenant in possession of all of the same. Had the latter been ejected by this plaintiff from that part of the leased estate now in controversy, the landlord, Mack, would have been liable on his covenants in the lease. If the latter had not previously taken possession or asserted any claim to that strip of land covered by a part of the shed wall, and if the original entry by his tenants, and their subsequent occupation for about two years, cannot be declared his, his adverse and hostile claim, his possession by means of his tenant Nicols, must at least date from the commencement of the latter's term, in October, 1866, more than 20 years prior to the commencement of this action. It is obvious that his exclusive, adverse, and hostile occupation and possession began then, if it had not before that time.

But it is claimed by plaintiff's counsel that the successive possessions of Mack by his tenants, of his heirs and their grantees, to the litigated premises cannot be tacked together so as to form a continuous and uninterrupted possession adverse to the plaintiff for the essential period of time; citing *Sherin* v. *Brackett*, 36 Minn. 152, (30 N. W. Rep. 551;) *Witt* v. *St. Paul & Nor. Pac. Ry. Co.*, 38 Minn. 122, 129, (35 N. W. Rep. 862.) The rule is there clearly stated. The privity spoken of and requisite is that existing between two successive holders when the latter takes *under* the earlier, as by descent, or by will, or grant, or by a voluntary transfer of possession. In this case the first tenants surrendered, and Mack gave possession in 1866 to Nicols of the entire premises covered by the easterly walls of his two-story building and of the shed in its rear, with full belief as to ownership. The plaintiff had previously been disseised, and this disseisin was in no way interrupted thereafter. The buildings with their easterly walls remained, and were successively transferred to the present defendants in 1883. The adverse possession was con-

nected as well as continuous, so that the possession of the true owner did not constructively intervene. Such continuity and connection may be effected by any conveyance or understanding which has for its object a transfer of the rights of the possessor or of his possession, when accompanied by an actual transfer of possession. *Vandall* v. *St. Martin*, 42 Minn. 163, (44 N. W. Rep. 525.)

We have mentioned that plaintiff's counsel place much reliance upon a clause in the descriptive part of certain deeds and leases, executed either by Mack in his lifetime or by those in privity with him, his heirs or their grantees. In each of these instruments the premises were described, substantially, as the easterly 30 feet of lot 12, excepting the easterly 2 feet previously conveyed to Ramsey; and, further, in each the stone building is mentioned and is described as standing on the conveyed premises; when it did not, altogether, in fact. The counsel insist that the exceptions of the strip of two feet in these deeds and leases are declarations by Mack and his successors that they made no claim to that part of the strip now in litigation on which the buildings stood, and must be considered as conclusive evidence that Mack, his heirs and their grantees, did not hold, or claim to hold, adversely. If it had appeared in evidence that, when executing these instruments and reciting the exception therein, Mack and his successors knew of the encroachment, and that in erecting their buildings they had trespassed upon the plaintiff, there might be merit in the counsel's contention; but the testimony is to the contrary. All parties supposed and believed the structures were on the line, and not over it.

The point is made that Mack, who died in 1870, and likewise his heirs, whose interests were not transferred until 1883, were not residents of, nor could they have been found within, the state. It has been held at the present term of this court that the exceptions found in Gen. St. 1878, c. 66, § 15, do not apply in actions to recover real property, or to recover the possession of the same. *City of St. Paul* v. *Chicago, Mil. & St. Paul Ry. Co., supra,* 387.

Judgment affirmed.