ALMOND SCHMIDT AND ANOTHER v. HERMAN MARSCHEL.[1]

January 16, 1942.

No. 32,762.

*H. S. Whipple* and *Henry Spindler,* for appellants.
*O. J. Anderson,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Action to partition a tract of relicted land on the south shore of Pelican Lake, Wright county, Minnesota. Defendant answered alleging ownership of such land situated between the lake shore and the property owned by plaintiffs. The trial court found for defendant, and plaintiffs appeal from an order denying their motion for a new trial.

Pelican Lake is a meandered body of water covering about 1,200 acres of land and extending into 13 governmental sections.

[1]Reported in 2 N. W. (2d) 121.

The water in the lake has risen and fallen with the years. In seasons of normal rainfall it has risen and covered the lake bottom, and in dry seasons it has receded at times to such an extent as to leave large bodies of relicted land between the meander line and low-water mark. The tract here involved consists of about 80 acres and is almost entirely located in the west half of the southeast quarter of section 7, township 120, range 24. For convenience, we shall refer to it as the disputed tract. It is designated as such on the plat here shown.

## LEGEND

= Disputed Land

"A" = Meander Corner No. 21

Line A B = West Line Of Disputed Land

Line A C = South Line Of Disputed Land

Line C D H = East Fence Line Before Action Began

Line C E F = East Fence At Time Of Trial.

━•━•━•━► = Fence

▤▤▤▤▤ = Appellant's Land

Defendant is the owner of government lots 1 and 2 in section 7 and of the relicted land lying between these lots and the water's edge. The line between the disputed tract and defendant's land, including the relicted land, is not in dispute. It is shown on the plat between the points A and B.

Plaintiffs are the owners as tenants in common of the northwest quarter of the northeast quarter of section 18, township 120, range 24. This tract, which consists of government lot 1 in section 18, and about 16.83 acres of relicted land lying north and east of the meander line, adjoins the disputed tract on the south. The line between these tracts is shown on the plat between the points A and C.

The trial court found:

"That the south 25 rods of said disputed land has been relicted land continuously for forty-four years immediately prior to the commencement of this action, during all of which time the defendant has been in the actual, open, continuous and exclusive possession thereof under a claim of right to the ownership to the fee thereof and hostile to all adverse claims thereto; and that defendant has been in the actual, open, continuous and exclusive possession of the balance of the disputed land during all the time it has been relicted land under a claim of right to the ownership to the fee thereof and hostile to all adverse claims thereto.

"That on December 21, 1895, and for some time prior thereto, there was a wire fence extending easterly from the southwest corner of the disputed land (which point is at meander corner number 21) a distance of 1,096.5 feet along the south boundary line of the disputed land to the southeast corner of disputed land and thence north along the east boundary line of disputed land a distance of 665 feet and there terminating, which fence then was a part of defendant's father's cattle pasture fence; that ever since December 21, 1895, defendant has maintained said fence keeping it in a state of good repair and using it as a part of his cattle pasture fence: that as Pelican Lake receded the north end of this fence was extended in a northeasterly direction so as to enclose

the land thus relicted; and that since the commencement of this action the part of said fence thus extended northeasterly has been straightened so that at the time of the trial it was on the east boundary line of the disputed land.

"That for more than 30 years immediately prior to the spring of 1939 plaintiffs and their predecessors in ownership of the so-called NW ¼ of NE ¼ of Section 18, which lies south of and next to the disputed land, have successively recognized and acquiesced in the line along the said wire fence extending easterly from said meander corner number 21, a distance of 1,096.5 feet to the southeast corner of the disputed land as a boundary line between said NW¼ of NE¼ and the lands owned by defendant."

The court concluded "that defendant is the owner in fee simple of the disputed land and entitled to judgment determining that he is the owner in fee thereof."

The appeal presents these questions: (1) May title to relicted land be acquired by adverse possession; and (2) if so, has defendant established such title by adverse possession?

This court has repeatedly held that owners of land bordering on the shore of a meandered nonnavigable lake own the bed of the lake in severalty. 1 Dunnell, Dig. & Supp. § 1070; Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L. R. A. 670, 38 A. S. R. 541; Shell v. Matteson, 81 Minn. 38, 83 N. W. 491; Hanson v. Rice, 88 Minn. 273, 92 N. W. 982; Tucker v. Mortenson, 126 Minn. 214, 148 N. W. 60. Title to such land passes by a deed conveying the shoreland unless a contrary intention appears. Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L. R. A. 670, 38 A. S. R. 541. Where the lake is navigable in fact, its waters and bed belong to the state in its sovereign capacity, and the riparian owner takes the fee only to the high-water mark, but with all the rights incident to riparian ownership, including the right to accretions or relictions formed or produced in front of his land by the accession or recession of the waters. Lamprey v. State, *supra.*

By stipulation in open court, any dispute as to the correct boundary division was eliminated from the issues, and the sole

question became one of ownership, it being agreed that the correct boundary line is either A-B or A-C. (See plat.)

■ We have found no Minnesota case on the point, but we have no doubt that title to relicted lands may be acquired by adverse possession. In Markusen v. Mortensen, 105 Minn. 10, 116 N. W. 1021, the defendant claimed title by adverse possession to portions of a dried-up lake bed. The court held that the evidence was not sufficient to require such a finding. The title of a riparian owner to an island in a nonnavigable stream may be obtained by adverse possession. Briard v. Hashberger, 107 Neb. 199, 185 N. W. 430. And if lands are the subject of private ownership, adverse possession may be had of them even though they are covered by water. Fitzwater v. Fassett, 69 Pa. Sup. 286; Allen v. McKay & Co. 120 Cal. 332, 52 P. 828; Illinois Steel Co. v. Bilot, 109 Wis. 418, 84 N. W. 855, 85 N. W. 402, 83 A. S. R. 905. Title to the shores or flats of tidewaters where privately held may be acquired by adverse possession. Wheeler v. Stone, 1 Cush. (55 Mass.) 313; City of Boston v. Richardson, 105 Mass. 351; Clancey v. Houdlette, 39 Me. 451; Treat v. Chipman, 35 Me. 34. Title to accretions and relictions may be transferred separately from the upland to which they are attached. Patton, Titles, § 174. It is evident that plaintiffs, had they chosen to do so before divested of their title, could have conveyed the disputed land separately from the mainland. *Cf.* Bradshaw v. Duluth I. M. Co. 52 Minn. 59, 53 N. W. 1066; Bade, "Title, Points and Lines in Lakes and Streams," 24 Minn. L. Rev. 305, at p. 310.

Cases cited by plaintiffs in support of their contention that riparian rights belong exclusively to the owner of the originally granted land and cannot be severed therefrom are not in point. A riparian owner has no more exclusive right to relicted property than he has to any other property he might own, and if title may be divested by adverse possession in the one case it may in the other. The case of Lamprey v. State, *supra,* is not authority to the contrary. It merely stated a rule to the effect that the state could not cut off riparian rights of an abutting owner by asserting its

sovereign dominion over relictions. That rule was designed to protect a riparian owner's fundamental right of access to the water, and reasons supporting it can have no application in a case of this character.

■ The evidence clearly establishes that defendant acquired title by adverse possession. He has lived on the farm all his life, and he testified that the south 30 rods of the disputed land was relicted land during the time his father owned the farm and that it was enclosed with other lands and used by his father as a pasture at the time defendant acquired title to the farm. During the 44 years defendant has owned the farm he has at all times considered himself the owner of the disputed land, and at the trial he testified to the following acts of ownership: Cutting trees and burning them, removing rocks, disking and sowing clover on the land, authorizing others to cut and take willows for their own use, selling trees growing on the property, and renting to plaintiffs his pasture, which included the disputed land. A number of other persons testified to the effect that they had always considered defendant to be the owner, had asked permission to cut willows on the land, and had never seen the water of the lake come closer than 25 or 30 rods from the south boundary, the fence.

On cross-examination defendant stated that he did not intend, under the deed from his father, to take any land that did not belong to him. The point is made that this testimony shows that he did not intend to hold adversely, and that therefore the element of hostility necessary to make out title by adverse possession is lacking. It may be said in answer to this that it is not necessary for a disseizor to avow himself to be a wrongdoer. If he enters into possession of property under an honest belief that such property belongs to him and occupies it as his own with the intention to exclude others, he holds adversely. If such possession is continued the sufficient length of time, it will ripen into title, regardless of the good faith or bad faith of the disseizor. Carpenter v. Coles, 75 Minn. 9, 77 N. W. 424. He may appropriate the property under an honest mistake. Gehan v. Morgan, 189 Minn. 250, 248 N. W.

820; Kelley v. Green, 142 Minn. 82, 170 N. W. 922; Fredericksen v. Henke, 167 Minn. 356, 209 N. W. 257, 46 A. L. R. 785; Stevens v. Velde, 138 Minn. 59, 163 N. W. 796; Ramsey v. Glenny, 45 Minn. 401, 48 N. W. 322, 22 A. S. R. 736; Brown v. Morgan, 44 Minn. 432, 46 N. W. 913; 1 Am. Jur., Adverse Possession, §§ 211, 212.

Defendant's title to the 25-rod tract carries with it the right to all accretions and relictions attaching thereto. Having title in fee to the land bordering on the water, he necessarily acquires the riparian rights incident to such ownership. The statute of limitations in its application to such accretions or relictions relates back to the time it began to run in favor of the adverse possessor. Bellefontaine Imp. Co. v. Niedringhaus, 181 Ill. 426, 55 N. E. 184, 72 A. S. R. 269; Davis v. Haines, 349 Ill. 622, 182 N. E. 718; Saulet v. Shepherd, 4 Wall. 502, 18 L. ed. 442; Benne v. Miller, 149 Mo. 228, 50 S. W. 824; Campbell v. The Laclede G. L. Co. 84 Mo. 352. It has been held that in the case of a nonnavigable lake one acquiring title to the shoreland by adverse possession also acquires the fee to the thread or middle of the lake. Ridgway v. Ludlow, 58 Ind. 248.

Since defendant has title by adverse possession, we deem it unnecessary to consider whether there was an establishment of a boundary by practical location. The circumstances seem to justify the trial court's finding in this respect.

Order affirmed.