SSM INVESTMENTS, a co-partnership consisting of Arvid W. Skog, Thomas E. McKee and Richard J. Sybrant, Appellant,

v.

Kenneth M. SIEMERS, Deceased, et al., Respondents.

No. 50087.

Supreme Court of Minnesota.

March 28, 1980.

Rehearing Denied May 13, 1980.

Henson & Efron and Wellington W. Tully, Jr., Minneapolis, for appellant.

William C. Hudson and Jeffrey J. Haberkorn, Aitkin, for respondents.

OTIS, Justice.

This action was brought by plaintiff in the Aitkin County District Court to determine adverse claims to a 100-foot strip of land bordering Mille Lacs Lake. The trial court held that plaintiff had failed to establish its claim and the heirs at law of Kenneth and Hazel Siemers own the land in dispute. We reverse.

To establish title by adverse possession, a disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time which, under Minn.Stat. § 541.02 (1978), is fifteen years. *Ehle v. Prosser*, 293 Minn. 183, 197 N.W.2d 458 (1972). In 1945 Kenneth and Hazel Siemers acquired as joint tenants title to Lot 1, Section 5, Township 44, Range 27, Aitkin County, except the West *100* feet thereof South of the right-of-way of Highway 169. Mille Lacs Lake borders the tract to the south. The tract is the site of Myr Mar Lodge, a private lodge and restaurant Mr. and Mrs. Siemers operated for several years. In November 1958 they conveyed the tract as described above, but excepting the West *200* feet thereof, to John M. Thompson and his wife. The land in question here is the East 100 feet of the West 200 feet excepted from the deed to the Thompsons. This strip contains no buildings and is divided by a driveway which leads to the lodge.

Following the conveyance Mr. and Mrs. Siemers rented the lodge and restaurant from Thompson under an oral lease and

continued to operate the resort until their deaths in 1964 and 1965, respectively. Some time during those years they placed concrete abutments on each side of the driveway at the west edge of the 100 foot strip and erected a sign identifying the road as the entrance to Myr Mar Lodge. They also maintained the road across the strip and kept it plowed in winter, mowed underbrush on the strip, and cleared trees which died or were blown over.

Upon the death of Mrs. Siemers in 1965, her son Richard leased the resort from Thompson, also under an oral arrangement, and operated it until 1968. In succeeding years Thompson sometimes rented it to tenants and sometimes transferred its possession to vendees under contracts for deed. These tenants and vendees also maintained the road across the strip, mowed it when necessary, and cut and removed dead trees from it.

A contract for deed entered in 1970 was terminated after one of the vendees died. Another contract for deed entered in May 1971 was cancelled by Thompson in 1974 upon the vendee's inability to make the payments required under it. After renting the lodge to a tenant for the next two years, in 1976 Thompson closed it and put the property up for sale. In October 1977 plaintiff purchased it by a warranty deed which purported to convey the 100-foot strip in dispute here. The defect in title was discovered when plaintiff had the title examined, following which this action was commenced.

At trial Thompson testified to his recollection that Kenneth Siemers at one time had told him there was a slight error in the title and "some day we would clean it up." Thompson also testified that at all times since the conveyance in 1958 that either he or his contract for deed vendees had, paid the taxes on the strip. It was not assessed separately from the property to which Thompson had acquired record title. Richard Siemers testified that he had never heard his parents or anyone else in his family claim any interest in the strip until the title defect was discovered.

On this evidence the trial court found that Kenneth and Hazel Siemers were the record owners of the strip and had occupied it as owners until their deaths. He also found that because of the termination of the contracts for deed there had been periods of time when the lodge property adjacent to the strip had been vacant and unoccupied. He concluded that plaintiff had not established continuous adverse possession by its grantor for the statutory period.

■ Turning first to the character of the Siemers' occupancy of the property after the conveyance to Thompson, we find no evidence in the record that they viewed themselves as its owners. They paid no taxes on the strip; they made no assertions to their children or to anyone else that they owned it; their maintenance of the strip and the road, as well as their installation of the abutments and sign, were acts undertaken as tenants rather than as owners of the strip. Their possession thus inured to the benefit of Thompson as their landlord for purposes of § 541.02. *City of St. Paul v. Chicago, Mpls., & St.P. Ry.*, 45 Minn. 387, 48 N.W. 17 (1891). *See also Schmidt v. Marschel*, 211 Minn. 539, 2 N.W.2d 121 (1942). Similarly, the possession of Richard Siemers and of the subsequent tenants of the lodge inured to the benefit of their landlord, plaintiff's grantor.

■ The trial court further found that Thompson's possession of the strip in dispute had been interrupted because there had been periods of time when the lodge property adjacent to the strip was vacant and unoccupied. His testimony with respect to the succession of tenants and vendees who occupied the property until May 1976, did not establish precisely how long each remained in possession of the property. However there is nothing which reasonably supports an inference that it was vacant until May 1976, when he closed the lodge and "put it up for sale." In the absence of evidence to the contrary, the possession of the vendees under the contracts for deed, like that of tenants, was subordinate and not hostile to Thompson. *Ennis v. Stanley*, 346 Mich. 296, 78 N.W.2d

114 (1956). *See also* 3 *American Law of Property* §§ 15.9, .10 (1952).

We therefore conclude that plaintiff has established by sufficiently clear and convincing evidence that its grantor had been in continuous adverse possession of the property in dispute for the required fifteen year period. The judgment appealed from is vacated and the matter remanded to the trial court for issuance of amended findings of fact, conclusions of law, and order for judgment consistent with the decision we here reach.

Reversed.

TODD, J., took no part in the consideration or decision of this case.