## PARK DISTRICT OF the CITY OF DEVILS LAKE, Plaintiff and Appellant,

v.

## David GARCIA and Estelle Garcia, and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the complaint, Defendants and Appellees.

### Civil No. 10313.

Supreme Court of North Dakota.

May 26, 1983.

Lewis C. Jorgenson, Devils Lake, for plaintiff and appellant Park Dist. of the City of Devils Lake.

David Garcia, of Garcia & Garcia, Devils Lake, for defendants and appellees Garcia; on brief.

Murray G. Sagsveen, Sp. Asst. Atty. Gen., Bismarck, for amici curiae State of N.D. and Garrison Diversion Conservancy Dist.

Carol E. Dinkins, Asst. Atty. Gen., and Dirk D. Snel and Kathleen P. Dewey, Attys., Dept. of Justice, Washington, D.C., for amicus curiae The U.S.; on brief.

VANDE WALLE, Justice.

The Park District of the City of Devils Lake (hereinafter "Park District") appealed from a judgment quieting title in David and Estelle Garcia. We reverse the judgment and remand the case for further proceedings consistent with this opinion.

This appeal reaches us in a strange posture. James G. Schroeder brought a quiet-title action against the Garcias and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, a portion of property described as "All that part of Lot Three (3) of Section Nineteen (19), Township One Hundred Fifty-three (153), Range Sixty-four (64), which lies West of the plat of Elmwood Addition to Chautauqua as of record in the office of the Register of Deeds, Ramsey County, North Dakota, including all Riparian Rights accruing to the aforesaid property, ..." The complaint excluded certain property which Schroeder's complaint conceded was owned by the Garcias. The land in question is on the shore of Devils Lake and the abstract of title, admitted as an exhibit, indicates Schroeder's title began with a patent from the United States in 1884. The Garcias answered the complaint and counterclaimed, alleging a claim of title to a portion of the property through adverse possession for more than 20 years; that the property lies below the meander line of Devils Lake; and that the adverse possession was prior to the time the property was deeded to the United States by the public. Neither the State nor the United States was named as a party in either the complaint of the Park District or the counterclaim of the Garcias. Prior to trial, Schroeder conveyed the property by special warranty deed to the Park District. The trial court, upon motion of the Park District, substituted the Park District for Schroeder in the action.

After a trial to the court, the trial court found that the Garcias came into actual

possession of certain property on July 18, 1956, under a contract for deed and that since that time they have claimed the disputed property "adjacent or contiguous to their property . . . exclusively, openly, and notoriously in their own right adversely to the world and especially to the plaintiff Park District of the City of Devils Lake, . . ." The trial court further found that the Garcias have claimed the property "exclusively, openly and notoriously in their own right adversely to the world and especially to plaintiff Park District of the City of Devils Lake, in the following manner: that defendants have constructed fences around a portion of premises described aforesaid, which constitute a substantial inclosure protecting the area, and, as to the premises not inclosed, the defendants have made improvements to said area." The trial court dismissed the Park District's claim and quieted title in the disputed property in the Garcias.

After the trial court issued its findings of fact, conclusions of law, and order for judgment, but before the entry of judgment, there was an exchange of correspondence between counsel for the parties, counsel for the State of North Dakota (Murray Sagsveen, Special Assistant Attorney General), and the trial court indicating that the State had become aware of the proceedings and claimed title to the property because: the land was between the meander line and the shore line; the State claimed that the meander line is the ordinary high-water mark for Devils Lake; the State claimed to hold the bed of Devils Lake as trust lands; and a suit was pending in the United States District Court in which the question of whether or not the State acquired the bed of Devils Lake at the time of Statehood was at issue as well as the relationship of the meander line and the ordinary high-water mark. The State urged that because it was not served nor made a party to this pro-

ceeding that the judgment should not affect the rights of the State or the Garrison Diversion Conservancy District to subsequently claim title to the same land. After discussing several options the State suggested that the judgment be drafted to clearly indicate that it resolved only the dispute between the named parties but would not prejudice any claims of the State or the Garrison Diversion Conservancy District to any of the land below the meander line described in the judgment. After a considerable amount of additional correspondence between the trial court and counsel for the parties and the State, in which all parties appeared to agree that the judgment would not be determinative of the interests of the State or the Garrison Diversion Conservancy District, but apparently could not agree on a specific amendment to the findings of fact, conclusions of law, and order for judgment, the trial court directed that judgment be entered in accordance with its original order. The Park District appealed from the judgment and raised three issues:

1. Whether or not riparian land may be acquired through adverse possession.

2. Whether or not the Garcias have proved adverse possession.

3. Whether or not the judgment includes more riparian land than was claimed in the original action.[1]

Pursuant to Rule 29, N.D.R.App.P., the State of North Dakota and the United States of America requested, and received, leave of this court to file amicus curiae briefs. In its brief the State of North Dakota, although acknowledging the issues raised by the Park District, urged the following issue: Is the land in question owned in fee simple by the Park District or the Garcias, or is it sovereign trust land of the State of North Dakota?[2] A summary of the argument, as stated in the brief of the State, is:

---

1. At oral argument counsel for the Park District informed us that the Park District's primary concern is access across the disputed property to Devils Lake for recreational purposes.

2. The State, in its motion for leave to file an amicus curiae brief as well as in the letter accompanying the brief, acknowledged that its position was not in support of either party, as contemplated by Rule 29, N.D.R.App.P.

"Devils Lake is navigable. Accordingly, title to the bed vested with the State as an incident of statehood.

"The bed of Devils Lake is sovereign land held in trust for the people of North Dakota. Although the State may authorize temporary private use of the bed, the State retains full control over the bed to the ordinary high water mark (here the meander line).

"Therefore, the trial court Judgment that Appellee Garcia owns a portion of the bed, in fee simple, is erroneous."[3]

The United States, on the other hand, urged in its amicus brief that the State of North Dakota may not raise issues on appeal which were neither litigated by the parties in the trial of this case nor ruled upon by the trial court. The United States contends that the issues which the State would have us decide in this appeal are also issues pending in a suit in Federal District Court in which both the United States and the State are parties.[4]

The State of North Dakota concedes that the issues it raises in this appeal were neither raised by the parties in the action nor decided by the trial court. However, it urges that the issues are of great import and that we should decide in this appeal these matters.

We have reviewed the briefs of the parties and the briefs of the amici curiae as well as the record in this case. Although the questions raised by the State are intriguing we agree that they also are of considerable import, affecting not only the Park District and the Garcias but other parties, both private and public, who may claim title to property between the meander line of Devils Lake and the shore line. Not only are there legal matters involved in these issues, there are factual issues as well. Judicial economy might indicate we should dispose of this matter now because the issues have been placed before us. To do so, however, would be contrary to the long-standing position of this court that, ordinarily, issues not raised nor decided in the trial court will not be considered on appeal. *Caldis v. Board of Cty. Comrs., Grand Forks Cty.,* 279 N.W.2d 665 (N.D.1979). Furthermore, it is precisely because the issues the State raises are of considerable import to not only the parties to this action but to others as well that this court should consider these issues only after a complete record is made in the trial court and the trial court has made the necessary findings and considered the legal issues.

Although we decline to consider the issues raised by the State on the record before us, we cannot confine ourselves to the narrow issue of whether or not the Garcias have proved adverse possession as against the Park District.[5] To do so would require us to ignore the issue of whether or not any person can acquire title to riparian land abutting a navigable body of water by ad-

3. Presumably the position of the State is that a judgment decreeing that appellant Park District owned a portion of the lake bed would also be erroneous. In oral argument the attorney for the State indicated that both the Garcias and the Park District were attempting to argue the rights of a third party, i.e., the State. The attorney for the State also conceded the State did not care which owner has the best of a bad title.

4. The concern of the State and the United States about an opinion from this court in this case apparently stems from any impact such an opinion might have on an action pending in Federal District Court entitled *101 Ranch v. United States of America,* Civil No. A2–81–89, in which the United States is named as defendant and the State of North Dakota and the Board of Directors of the Garrison Diversion Conservancy District are intervenors, and in

which some of the same issues the State attempts to raise here are being litigated.

5. Were we to confine ourselves to the narrow issues which exist only between the Garcias and the Park District, we might well conclude that the evidence is sufficient to sustain the findings of the trial court that the Garcias acquired the land by adverse possession and that the judgment did not include a greater amount of land than that which the evidence, received by the trial court without objection, indicates was adversely possessed by the Garcias. There is authority for so limiting such a decision. See, e.g., *Woodland v. Woodland,* 147 N.W.2d 590 (N.D.1966), in which this court indicated that because the record in that case did not establish whether or not there might be claims made to accretions by owners of other properties in the area, the judgment on remittitur must be limited to the interest found in

verse possession, if indeed the land in question is riparian land abutting a navigable body of water. Thus, although we might conclude from the findings of fact of the trial court that the Garcias had taken the necessary steps to acquire property by adverse possession, that determination may be meaningless if the law does not permit riparian land abutting a navigable body of water, the bed of which is owned by the State, to be acquired through adverse possession.[6]

We believe the proper resolution of this appeal is to reverse the judgment of the trial court and remand the matter to the trial court with the direction that it permit the State, the United States, and other interested parties to intervene as provided in Rule 24, N.D.R.Civ.P.

It is so ordered.

ERICKSTAD, C.J., and PEDERSON, SAND and PAULSON, JJ., concur.

favor of one party as affecting the rights of the other party. In *Woodland,* the other claims were not reflected in the record. Here, through the briefs of the amici curiae, we have been made aware of other claims. Because we reverse the judgment and remand for further proceedings, all issues between the Park District and the Garcias, as well as other issues raised by the State and the United States, should they intervene, will be before the trial court for determination.

6. The trial court, in its memorandum opinion, determined that title to relicted land may be acquired by adverse possession. The trial court relied upon the decision in *Schmidt v. Marschel,* 211 Minn. 539, 2 N.W.2d 121 (1942), but that decision involved a nonnavigable body of water. There is some authority for a finding that Devils Lake is a navigable body of water. See *Rutten v. State,* 93 N.W.2d 796 (N.D.1958), in which the parties, *by stipulation,* agreed that "Devils Lake is a body of water navigable in fact."