William SZARKOWSKI and John Szarkowski, a partnership, d/b/a Szarkowski Trucking, Plaintiffs and Appellants,

v.

RELIANCE INSURANCE COMPANY, a foreign Corporation, Defendant and Appellee.

Civ. No. 11347.

Supreme Court of North Dakota.

April 16, 1987.

As Corrected June 17, 1987.

James R. Jungroth, of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for plaintiffs and appellants.

Philip L. Bruner, of Hart, Bruner, O'Brien & Thornton, Minneapolis, Minn., and Zuger & Bucklin, Bismarck, for defendant and appellee.

Daniel L. Hovland, of Fleck, Mather, Strutz & Mayer, Bismarck, for amici curiae, Cenex and Conoco, Inc.

Mr. Merle T. Pederson, Asst. Atty. Gen., North Dakota Ins. Dept., Bismarck, for amicus curiae, State Com'r of Ins.

VANDE WALLE, Justice.

The plaintiff, Szarkowski Trucking (Szarkowski), a partnership of John and William Szarkowski, appealed from a summary judgment dismissing its action against the defendant, Reliance Insurance Company (Reliance). We reverse and remand.

Szarkowski is a small trucking company which entered into an oral subcontracting agreement to provide hauling services for Scherbenske Excavating, Inc. (Scherbenske), on three construction projects for which Scherbenske was the general contractor. For these projects Scherbenske had acquired performance-payment bonds from Reliance.

Szarkowski asserts that Scherbenske still owes it $38,625 for the truck-hauling work performed on the projects. When it appeared that Scherbenske would not pay this remaining balance on the debt, Szarkowski attempted to collect it from Reliance as surety under the performance bonds. When payment was not forthcoming from Reliance, Szarkowski filed this lawsuit seeking to recover the debt from Reliance under the bonds and, in the alternative, seeking compensatory and punitive damages in tort for Reliance's unreasonable and bad-faith conduct in withholding payment of Szarkowski's claim. The trial court granted Reliance's motion for summary judgment dismissing Szarkowski's complaint, on the grounds that the one-year statute of limitation had run, thereby precluding Szarkowski's claim under the performance bonds and that, as a matter of law, Szarkowski was not entitled to relief on its tort claim against Reliance.

Szarkowski agreed in the trial court, for purposes of the summary-judgment motion, that the one-year statute of limitations under Section 48–02–17, N.D.C.C., was applicable to its claim against Reliance as surety on the performance bonds. However, in an amici curiae brief filed with this court by Cenex and Conoco, Inc., counsel urged that the appropriate statute of limitations is the six-year limitation provided under Section 48–02–17, N.D.C.C. Szarkowski then filed a reply brief attempting to incorporate the statute-of-limitations issue raised by amici and urged this court to resolve that issue on appeal. This court will not resolve issues which have not been properly raised in the first instance before the trial court. *Park District of City of Devils Lake v. Garcia,* 334 N.W.2d 824 (N.D.1983); *Caldis v. Bd. of County Comm'rs,* 279 N.W.2d 665 (N.D.1979). Szarkowski conceded the applicability of the one-year statute of limitation before the trial court. Consequently, we conclude that Szarkowski has not preserved this issue for review on appeal.

In the amici curiae brief filed by counsel on behalf of Cenex and Conoco, Inc., the issue is discussed whether Chapter 26.1–04, N.D.C.C., North Dakota's Unfair Claims Practices Act, creates a private civil cause of action. Appellant Szarkowski, in its written brief on appeal, states that, "[n]either the Trial Court nor this Court needs to decide whether or not North Dakotas Unfair Claims Practices Act grants a private cause of action to an individual for an unfair claims practice such as occurred in this case." Szarkowski states that its tort claim is not brought under authority of the foregoing Act, but that the Act is cited peripherally to "refine and define" which actions constitute bad faith and unfair settlement practices in the business of insurance.[1] We conclude, therefore, that this issue has not been properly raised by Szarkowski on appeal and that it is unnecessary for us to discuss it further.[2]

In its complaint Szarkowski asserted that Reliance engaged in unfair claims settlement practices in violation of Section 26.1–04–03(9)(d), N.D.C.C., of the North Dakota Unfair Insurance Practices Act, by failing to act in good faith to effectuate "prompt, fair, and equitable settlements of claims." On appeal Szarkowski contends that the trial court erred in its determination that the provision does not apply to surety companies or, in particular, to Reliance in this case.

■ Section 26.1–04–03, N.D.C.C., deals with unfair and deceptive acts or practices "in the business of insurance." Reliance is a foreign corporation which has been authorized by the North Dakota Insurance Commissioner to transact insurance and bonding business in the state. This court has recognized that a paid surety or bonding company is generally treated as an insurer rather than according to the strict law of suretyship. *Ireland's Lumber Yard v. Progressive Contractors,* 122 N.W.2d 554 (N.D.1963); *Long v. American Surety Company,* 23 N.D. 492, 137 N.W. 41 (1912). *Couch on Insurance* 2d Revised Edition § 15:8 states in relevant part:

"A bond entered into by a compensated surety and guaranteeing the performance of a contract is a contract of insurance rather than of ordinary suretyship and is to be interpreted according to the rules relating to the former instead of the strict rules applicable to the latter. For most purposes, contracts of guaranty and suretyship are construed by the same principles as apply to insurance contracts, where they are written by companies which engage in the business of suretyship or guaranty, that is, for compensation and profit."

See also, *Appleman, Insurance Law & Practice,* § 5273. The foregoing authorities support the conclusion that Reliance, in issuing performance bonds for a profit, is engaged in the business of insurance as to which the provisions of Section 26.1–04–03, N.D.C.C., apply in this case. California has similar provisions in its unfair practices act which the California Court of Appeal held were applicable to surety companies. *General Insurance Company v. Mammoth Vista Owners Association,* 174 Cal.App.3d 810, 220 Cal.Rptr. 291, (3 Dist.1985). In so concluding, the court made the following analysis with which we agree:

"We recognize liability insurance is not identical in every respect with suretyship. But we are not concerned with the differences between suretyship and liability insurance. We are concerned with whether the Legislature included suretyship among the classes of businesses it intended to regulate under the Insurance Code. It clearly did so.

"The subjection of surety insurance to the provisions of Insurance Code section 790.–03, subdivision (h), is consistent with

---

**1.** See *Adam v. Mt. Pleasant Bank & Trust Co.,* 387 N.W.2d 771 (Iowa 1986), and *Countryman v. Mt. Pleasant Bank & Trust Co.,* 357 N.W.2d 599 (Iowa 1984) [defendant's violation of statutory provisions is circumstance for factfinder to consider in determining whether defendant committed conspiracy to defraud].

**2.** In granting permission for the filing of amici curiae briefs this court limited those briefs to a discussion of the issues raised by the appellants. Accordingly, this court will not consider issues raised by the amici curiae. See footnote 11, *B.R.T. v. Executive Director of the Social Service Bd.,* 391 N.W.2d 594 (N.D.1986).

the purpose of deterring unfair and deceptive practices in the business of insurance. As demonstrated by this case, obligees under surety contracts are as susceptible to deceptive and unfair claims settlement practices as insurers and claimants under liability insurance contracts." (220 Cal.Rptr. at 298.)

We conclude that Section 26.1–04–03, N.D. C.C., is applicable to Reliance in its transaction of insurance and bonding business within this State, including its dealings with the performance bonds involved in this case.

In its complaint Szarkowski also raised a claim in tort asserting that it was damaged because Reliance acted "unreasonably and in bad faith withholding payment of the claim ..." and that Reliance "did not attempt in good faith to effectuate prompt, fair and equitable settlement of the claim ..." The trial court determined that, as a matter of law, Szarkowski was not entitled to relief on its tort claim, because the Unfair Claims Practices Act does not apply to surety companies such as Reliance and because, even if applicable, the Act does not create a private cause of action. Szarkowski asserts that the facts alleged by it support its tort claim independent of any private cause of action which might exist under the Unfair Claims Practices Act. We agree with Szarkowski that it has raised a valid claim in tort which requires a trial on the merits.

In *Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Insurance Co.,* 279 N.W.2d 638 (N.D.1979), we stated in relevant part:

"We hold that in North Dakota an insurer is obligated to act in good faith in its relationship with its policyholders. An insurer's breach of this duty may subject it to liability for damages to the insured proximately caused thereby. Cf. *Bekken v. Equitable Life Assur. Soc.,* 70 N.D. 122, 293 N.W. 200 (1940), wherein this court held that an insurance company is under a legal duty to take prompt action on an application for an insurance policy.

\*    \*    \*    \*    \*    \*

"Whether an insurer has acted in bad faith in refusing to pay amounts claimed under an insurance policy is a question for the trier of fact." (279 N.W.2d at 643–644)

See also, *Smith v. American Family Mutual Insurance Co.,* 294 N.W.2d 751 (N.D. 1980).

In both *Corwin, supra,* and *Smith, supra,* the tort action against the insurer was brought by the insured. In this case the tort claim is brought against Reliance not by the insured but rather by Szarkowski, Scherbenske's creditor, against whom Scherbenske defaulted. Under its performance/payment bonds Reliance agreed to be "held and firmly bound ... unto all persons, firms, and corporations who may furnish materials for, or perform labor upon the building or improvements ..." The bonds also stated in relevant part "... the principal shall ... promptly make payment to all persons supplying labor and material to the principal or to any subcontractor of the principal in the prosecution of the work provided for in said Contract (failing which such persons shall have a direct right of action against the principal and surety under this obligation) ..." Thus Szarkowski, as a subcontractor who furnished labor and materials to Scherbenske on the bonded projects, was a third-party beneficiary and an intended claimant having the right to sue Reliance on the bonds in the event of Scherbenske's default. See *Dealers Electrical Supply v. United States Fidelity & Guaranty Co.,* 199 Neb. 269, 258 N.W.2d 131 (1977); *RGK, Inc. v. United States Fidelity & Guaranty Co.,* 292 N.C. 668, 235 S.E.2d 234 (1977); *Frost v. Williams Mobile Offices, Inc.,* 288 S.C. 444, 343 S.E.2d 441 (1986). As an intended claimant Szarkowski stands in a substantially identical relationship with Reliance as did the insured claimants with the insurers in *Corwin, supra,* and *Smith, supra.* We conclude, therefore, that Reliance owed Szarkowski a similar duty of good faith and fair dealing in handling its claim and that Szarkowski has a right to bring an independent tort action against Reliance for breach of

that duty. See *General Insurance Company, supra.*[3] In this case there are genuine issues of material fact under which, depending upon their resolution, Szarkowski may be entitled to damages in tort. Thus the trial court erred in concluding that, as a matter of law, Szarkowski was not entitled to relief on the tort claim.

Szarkowski asserts that the trial court also erred in granting a summary-judgment dismissal, because there is a genuine issue of material fact as to whether Reliance should be estopped from asserting the statute of limitations as a defense in this case. We agree.

On an appeal from a summary judgment the evidence must be viewed in the light most favorable to the party against whom the summary judgment was granted, and the party presenting the motion has the burden of clearly showing that there is no genuine issue as to any material fact raised by the pleadings, depositions, answers to interrogatories, admissions on file, or affidavits. *Krueger v. St. Joseph's Hospital,* 305 N.W.2d 18 (N.D.1981); Rule 56(c), N.D.R.Civ.P.

The bonded projects on which Szarkowski provided hauling services for Scherbenske were completed during October 1981. In a letter dated March 4, 1982, and directed to Jack Strickland of the Fargo Insurance Agency, Szarkowski states that Scherbenske had failed to make payments for work performed on bonded projects and requested assistance to secure the balance due. Reliance concedes in its answers to interrogatories that the Fargo Insurance Agency is its agent. William Szarkowski testified by deposition that on March 12, 1982, he contacted Strickland by telephone and that during the conversation

"... he [Strickland] assured me that as long as we worked on bonded jobs that there wouldn't be any problem, that Scherbenskes would have to take care of it, or if something happened to where they didn't, that the bonding company would be liable for it. And he never stated anything when I talked to him about any statute of limitation or any certain time or any of that. He just assured me that there wouldn't be any problem.... He said if we worked on the bonded jobs, we could show what was bonded, that there wouldn't be any problem. He said that Scherbenskes would have to pay it, and if, for some reason, they didn't, that the bonding company would be liable."

William testified that within one or two days after that phone call he prepared a summarized listing based upon daily log sheets, of the projects and then numbers for which hauling was performed and the hours worked on each project. When there was no further response to these contacts, Szarkowski sent a letter, dated September 22, 1982, to Mike Hudson at Reliance's offices in Shawnee Mission, Kansas. The letter stated that many attempts had been made to collect money owed by Scherbenske on bonded projects and in it Szarkowski provided bond numbers, job locations, and amounts due on the projects. The letter also stated:

"If any questions or problems should arise, please feel free to contact me at (701)252–7348. In the event any further documentation is needed on this matter, please contact us at your earliest convenience in an attempt to expedite payment."

On November 10, 1982, William contacted Hudson by telephone. Regarding that conversation William testified by deposition in relevant part:

"A. ... He said the only thing was to establish how much. And as I stated, after that, I called in February several times, and they'd never connect me with him, and he'd never return my phone calls. He'd just more or less ignore me.

"Q. Can you recall any of the exact words used by Mr. Hudson?

"A. Just what I've already said. He just stated that he didn't deny that they owed us any money. He said he was

---

**3.** We note that a surety has no right of indemnity against its principal for damages incurred as a result of liability based upon the surety's independent tortious conduct. See *Barr/Nelson, Inc. v. Tonto's, Inc.,* 336 N.W.2d 46, 53–54 (Minn. 1983).

sure that they did. But he said that we would have to establish exactly how much before they could settle with us."

Szarkowski asserts that it was misled by Reliance and its agents into believing that the company had conceded its liability under the bonds for work performed on Scherbenske's bonded projects. Szarkowski also asserts that although Reliance's assurances of payment were conditioned upon receipt of adequate documentation Reliance failed to respond in a reasonable and good-faith manner to the documentation provided by Szarkowski and failed to specify what additional facts or documentation was necessary for payment to be made.

■ The doctrine of equitable estoppel may operate to preclude the application of a statute of limitations as a defense by one whose actions mislead another, thereby inducing him to not file a claim within the statute of limitations. *Krueger, supra.* See generally, Annot. 43 A.L.R.3d 429 (1972).

The facts of this case are similar to the circumstances in *Phillips Petroleum Co. v. United States Fidelity & Guaranty Co.,* 442 P.2d 303, 307 (Okla.1968), in which the Oklahoma Supreme Court held that there was sufficient evidence of wrongful conduct by the defendant surety company to estop it from asserting the statute of limitations:

> "As to defendant's position that the evidence in this case is insufficient to establish estoppel, we do not agree.
>
> \* \* \* \* \* \*
>
> "Mr. Adams, defendant's authorized agent who conducted the negotiations concerning plaintiff's claim ... testified ...
>
> > " 'And he asked me if I would look into it and verify it that W. E. Logan and Sons [Defendant's principal] owed this bill, would I pay it? I told them that we were a Surety for the principal, and, naturally, if they owed a bill for which we were liable and we had no defenses, why, naturally, we would pay it. \* \* \* '
> >
> > \* \* \* \* \* \*

> "In our view, the above quoted testimony of defendant's authorized agent, which is uncontroverted, conclusively establishes that defendant did promise, even though the promise was contingent, to pay plaintiff's claim."

In reaching its decision in *Phillips*, the Oklahoma Supreme Court relied upon *Douglass v. Douglass*, 199 Okl. 519, 188 P.2d 221, 224 (1947):

> "In order to estop a person from pleading the statute of limitations it is not necessary for such person to agree not to urge it, but it is sufficient if his conduct or promises are such as are naturally calculated to and do 'induce plaintiff into a belief that his claim would be adjusted if he did not sue.' Wood on Limitations, § 53c, note 52."

■ The evidence in this case, when viewed in the light most favorable to plaintiff Szarkowski, raises a genuine factual issue as to whether the conduct of Reliance and its agents wrongfully misled Szarkowski into believing that liability on the bonds was conceded and that payment would be forthcoming without filing a lawsuit so as to require, in the interests of justice, that Reliance be estopped from asserting the statute of limitations. We conclude that the trial court erred in determining that, as a matter of law, Szarkowski could not prove sufficient facts upon which to estop Reliance from asserting the statute of limitations. Thus the trial court erred in granting a summary-judgment dismissal without a trial on the merits.

The summary judgment is reversed, and the case is remanded for a trial on the merits.

ERICKSTAD, C.J., and MESCHKE and GIERKE, JJ., concur.

LEVINE, J., concurs in the result.